1

01:34:36   1

2

3

4                    UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION
6

7
     UNITED STATES OF AMERICA,          Case No. 1:07-cr-00007-1
8
        Plaintiff,                      Chicago, Illinois
9                                       November 16, 2009
           v.                           Sentencing
10

11   SCOTT LEWIS,

12      Defendant.
     -------------------------------
13

14
                       TRANSCRIPT OF SENTENCING
15          BEFORE THE HONORABLE VIRGINIA M. KENDALL
                   UNITED STATES DISTRICT JUDGE
16

17

18   APPEARANCES:

19

20
     For the Government:    Office of the U.S. Attorney
21                          By:  Stephen A. Kubiatowski
                            219 S. Dearborn St., 5th Fl.
22                          Chicago, IL 60604
                            (312) 353-5300
23

24

25

```
 1

 2

 3   APPEARANCES (Cont'd):

 4

 5

 6   For the Defendant:      Law Offices of Damon M. Cheronis
                             By:  Damon M. Cheronis, and
 7                                Timothy J. Fiscella
                             53 W. Jackson Blvd., Ste. 1750
 8                           Chicago, IL 60604
                             (312) 663-4644

 9

10   Also Present:           Malissa Groth,
                             U.S. Probation Department
11

12

13   COURT REPORTER:         FEDERAL OFFICIAL COURT REPORTER
                             April M. Metzler, RPR, CRR
14                           219 South Dearborn St., Rm. 2318-A
                             Chicago, IL 60604
15                           (312) 408-5154
                             April_Metzler@ilnd.uscourts.gov
16

17

18

19

20

21

22

23

24   Proceedings recorded by mechanical stenography; transcript
25   produced by notereading.
```

1

## I N D E X

2

**DESCRIPTION**                                                    **PAGE**

3

4

  **ALLOCUTION**                                                      **43**

5

6  **SENTENCE**                                                        **44**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

For a copy of this transcript, contact April Metzler, CRR
at (312) 408-5154

| | | |
|---|---|---|
| 01:34:40 | 1 | (Commenced at 1:34 p.m.) |
| 01:34:40 | 2 | THE CLERK:  07CR7, defendant number 1, USA versus |
| 01:34:45 | 3 | Scott Lewis. |
| 01:35:11 | 4 | MR. KUBIATOWSKI:  Good afternoon, your Honor.  Steve |
| 01:35:13 | 5 | Kubiatowski, representing the United States. |
| 01:35:14 | 6 | THE COURT:  Good afternoon, Mr. Kubiatowski. |
| 01:35:15 | 7 | MR. CHERONIS:  Good afternoon, your Honor.  Damon |
| 01:35:17 | 8 | Cheronis with Tim Fiscella representing Scott Lewis. |
| 01:35:19 | 9 | THE COURT:  Okay.  Good afternoon, Mr. Cheronis.  And |
| 01:35:22 | 10 | can you spell your last name, sir? |
| 01:35:23 | 11 | MR. FISCELLA:  Yes, your Honor.  It's |
| 01:35:26 | 12 | F-i-s-c-e-l-l-a. |
| 01:35:26 | 13 | THE COURT:  Okay.  Thank you.  Good afternoon. |
| 01:35:27 | 14 | Good afternoon, Mr. Lewis. |
| 01:35:29 | 15 | THE DEFENDANT:  Good afternoon. |
| 01:35:30 | 16 | THE COURT:  Okay.  Are we all ready to proceed to |
| 01:35:33 | 17 | sentencing today? |
| 01:35:34 | 18 | MR. CHERONIS:  Yes, your Honor.  And I apologize |
| 01:35:34 | 19 | about the late nature of the letters, but you did receive |
| 01:35:37 | 20 | those today? |
| 01:35:37 | 21 | THE COURT:  I did.  I received the letters this |
| 01:35:39 | 22 | morning -- |
| 01:35:39 | 23 | MR. CHERONIS:  Okay. |
| 01:35:40 | 24 | THE COURT:  -- and that's not a problem. |
| 01:35:41 | 25 | MR. CHERONIS:  Thank you. |

01:35:42    1    THE COURT:  I'll go through what I have on the record
01:35:44    2    in just a moment.
01:35:44    3        But, first of all, let's turn to the Presentence
01:35:47    4    Investigation Report.  Do we have a probation officer?
01:35:50    5        (Cellphone interruption.)
01:35:50    6        MS. GROTH:  Good afternoon, your Honor.  Malissa
01:35:52    7    Groth.
01:35:52    8        THE COURT:  All right.  Who's got the cellphone,
01:35:54    9    pager, whatever it is.  Who's got it?  All right.  Step
01:35:58   10    outside and turn it off, please.
01:36:02   11        All right.  Please, did you mention your name for the
01:36:04   12    record?
01:36:04   13        MS. GROTH:  Malissa Groth, your Honor, for the
01:36:07   14    record.
01:36:07   15        THE COURT:  All right.  Thank you, Ms. Groth, and
01:36:09   16    thank you for your very thorough report.  The Court
01:36:10   17    appreciates your hard work.
01:36:11   18        MS. GROTH:  Thank you.
01:36:12   19        THE COURT:  All right.  Did everyone receive a copy
01:36:13   20    of the report?
01:36:13   21        MR. KUBIATOWSKI:  Yes, your Honor.
01:36:14   22        MR. CHERONIS:  Yes, we did.
01:36:15   23        THE COURT:  All right.  And are there any factual
01:36:17   24    changes on the part of the Government to the report?
01:36:19   25        MR. KUBIATOWSKI:  Not from the Government, your

01:36:19  1  Honor.

01:36:21  2       THE COURT:  All right.  Mr. Cheronis, any factual

01:36:22  3  changes to the report?

01:36:22  4       MR. CHERONIS:  Not on behalf of Mr. Lewis.

01:36:24  5       THE COURT:  Okay.  Well, then have you had a chance

01:36:26  6  to review the report with Mr. Lewis?

01:36:27  7       MR. CHERONIS:  Yes, we did.  We went over it with

01:36:29  8  Mr. Lewis.

01:36:30  9       THE COURT:  Okay.  All right.  Then what we're going

01:36:31  10  to do now is go through the sentencing guideline calculations.

01:36:34  11  We need to do that first, and then we go to the 3553 factors.

01:36:38  12       So turning, first, to the calculations as set forth

01:36:43  13  in the probation officer's report at page 7, it is the

01:36:48  14  Government's position and the probation officer agrees that

01:36:51  15  the base offense level should be a level 34, based upon the

01:36:56  16  amount of drugs being between 15 and 20 kilograms.

01:37:00  17       And, Mr. Cheronis, you disagree saying that, in fact,

01:37:06  18  there were no drugs involved in the stash house proposed

01:37:09  19  robbery and, therefore, it should be something much less.

01:37:11  20       MR. CHERONIS:  Well, that, but in addition to that

01:37:15  21  and probably -- possibly, at least, more compelling than that

01:37:19  22  is, if you recall the testimony of Agent Gomez and also on the

01:37:23  23  videos and things like that, there were words used by Gomez

01:37:27  24  regarding, There's usually 25 kilos, you know, The last time I

01:37:31  25  was there there was 25 kilos.

| 01:37:33 | 1 | It is our position that the nature of the drugs was |
|---|---|---|

01:37:33  1   It is our position that the nature of the drugs was

01:37:40  2   somewhat ambiguous from Gomez's own mouth, and that there

01:37:44  3   wasn't necessarily an agreement to steal 20 to 25 kilograms.

01:37:48  4   Gomez would use the words like, Been that way before, or,

01:37:52  5   There's been that amount and that's what it usually is.  So

01:37:54  6   that is pretty much the thrust of our argument that Mr. Lewis

01:37:57  7   should not be held accountable for that amount of cocaine.

01:38:00  8        THE COURT:  Okay.  Mr. Kubiatowski, from the record,

01:38:02  9   how --

01:38:03  10        MR. KUBIATOWSKI:  We agree with probation, your

01:38:06  11   Honor.  Throughout the -- you heard the evidence.  Throughout

01:38:08  12   the course of the conversations, the amount discussed was

01:38:11  13   always 15 -- actually more -- 20 kilograms more often than not

01:38:16  14   was the phrase that was used.  Obviously, since it was

01:38:20  15   prospective, possible they could have thought something else

01:38:25  16   was going to be there.

01:38:26  17        But I believe the evidence demonstrated that the

01:38:32  18   defendants expected there to be at least 20 kilograms of

01:38:35  19   cocaine when they were going into the drug stash house.  The

01:38:38  20   fact that there would be a drug stash house there with several

01:38:41  21   occupants with armed guns would tend to suggest that there was

01:38:45  22   going to be a large amount of cocaine there.

01:38:47  23        THE COURT:  Okay.  Can you cite to the record

01:38:49  24   specifically regarding the tape recorded conversations as to

01:38:53  25   where 20 kilos are mentioned?

01:38:56 1    MR. KUBIATOWSKI:  Your Honor, I didn't bring those

01:38:58 2  cites with me, but during the testimony of the -- the

01:39:07 3  conversations almost uniformly said that he was going to be

01:39:10 4  picking up 20 kilograms -- they expected 20 kilograms of

01:39:14 5  cocaine.

01:39:15 6    Any time Agent Lopez -- Gomez did his cover story

01:39:23 7  during the December 14th meeting with Scott Lewis individually

01:39:26 8  and during the December 18th meeting where he met with the

01:39:31 9  three defendants altogether -- I'm sorry -- the -- Vernon

01:39:38 10 Williams and Mr. Lewis, in those two video- and audio-recorded

01:39:42 11 sessions, Mr. Gomez repeated his cover story and indicated

01:39:48 12 that he expected 20 kilograms to be there.

01:39:51 13    THE COURT:  Do you have --

01:39:52 14    MR. KUBIATOWSKI:  I don't know what those record

01:39:53 15 cites are, the actual exhibit number, but those tapes would

01:39:57 16 indicate 20 kilograms.

01:39:59 17    THE COURT:  Do you have any response or reply to

01:40:01 18 that, Mr. Cheronis?

01:40:04 19    MR. CHERONIS:  Briefly.  It's undisputed, and I think

01:40:06 20 the Government would agree, that we were dealing -- or at

01:40:10 21 least Agent Gomez and Mr. Lewis and whoever else was involved

01:40:11 22 were dealing with a prospective scenario, the details of which

01:40:17 23 were not completely fleshed out.

01:40:19 24    I think that was part of the nature of the sting

01:40:22 25 agreement.  In other words, this wasn't a situation where

01:40:24   1   Scott Lewis called up Agent Gomez and said, Deliver me 10

01:40:29   2   kilos of cocaine.  In that situation it would be hard for me

01:40:31   3   to argue that 10 kilograms of cocaine was not what Mr. Lewis

01:40:35   4   agreed to.

01:40:36   5          In this case the nature of the sting operation was

01:40:39   6   usually, in the past, it had happened.  And I don't think that

01:40:42   7   that necessarily means that Mr. Lewis was sure or agreed to

01:40:47   8   the fact that there were going to be 20 to 25 kilograms of

01:40:50   9   cocaine present during this alleged robbing of this fake

01:40:57  10   cartel.  So they're not going to disagree that this was

01:40:58  11   prospective, and I think that the prospective nature of the

01:41:01  12   agreement leaves room for ambiguity.

01:41:04  13          THE COURT:  Well, prospective in the sense, however,

01:41:06  14   that they came to the house -- the stash house on the date in

01:41:10  15   question to actually effectuate the robbery, right?

01:41:13  16          MR. CHERONIS:  No.  I mean prospective in the sense

01:41:15  17   that the actual sting itself was Locito, slash, Agent Gomez

01:41:19  18   talking about what might be there, based on things that had

01:41:23  19   been there in the past.  So what I'm saying is Agent Gomez

01:41:27  20   himself, Locito himself, could not have said with certainty to

01:41:31  21   Scott Lewis or Vernon Williams that there's going to be 25

01:41:34  22   kilograms of cocaine there.

01:41:35  23          He used words like usually.  He used qualifiers.  So

01:41:39  24   my position is that those qualifiers would cut into the actual

01:41:45  25   agreement to the specific amount.

| | | |
|---|---|---|
| 01:41:47 | 1 | THE COURT: All right. Well, I think the case law is |
| 01:41:51 | 2 | that the agreed upon amount is the amount that needs to be |
| 01:41:54 | 3 | used in calculating it. And so, Mr. Kubiatowski, you'll need |
| 01:41:59 | 4 | to go back to your office and get the transcripts and come |
| 01:42:02 | 5 | back in and show me the agreements, the actual specific |
| 01:42:07 | 6 | language, because we have a dispute as to what that is. |
| 01:42:11 | 7 | My memory is more in keeping with Mr. Kubiatowski's |
| 01:42:14 | 8 | memory, but I'd like to see whether there was this usually |
| 01:42:19 | 9 | language or if there was, in fact, an agreement. It was my |
| 01:42:24 | 10 | recollection that there was, in fact, an agreement. So I'm |
| 01:42:26 | 11 | sure they're in your office, right? |
| 01:42:27 | 12 | MR. KUBIATOWSKI: Yes, your Honor. |
| 01:42:27 | 13 | THE COURT: Okay. |
| 01:42:28 | 14 | MR. CHERONIS: And I do know it kind of was a sliding |
| 01:42:30 | 15 | scale. For instance, at times they would say usually and |
| 01:42:33 | 16 | maybe and at other times they said a specific amount, but I |
| 01:42:36 | 17 | think looking at the record would clear it up. |
| 01:42:37 | 18 | THE COURT: Okay. Can -- |
| 01:42:38 | 19 | MR. KUBIATOWSKI: But Mr. Lewis in his post-arrest |
| 01:42:41 | 20 | statement also indicated that he expected, he expected to be |
| 01:42:45 | 21 | robbing 15 to 20 kilograms of cocaine. |
| 01:42:48 | 22 | THE COURT: Okay. |
| 01:42:48 | 23 | MR. KUBIATOWSKI: So even if there's a dispute |
| 01:42:51 | 24 | regarding the transcripts, that's what he expected -- |
| 01:42:51 | 25 | THE COURT: Very good. I'd like to see both of them. |

| | |
|---|---|
| 01:42:54 | 1 |
| 01:42:57 | 2 |
| 01:42:57 | 3 |
| 01:42:59 | 4 |
| 01:43:02 | 5 |
| 01:43:06 | 6 |
| 01:43:10 | 7 |
| 01:43:12 | 8 |
| 01:43:13 | 9 |
| 01:43:14 | 10 |
| 01:43:17 | 11 |
| 01:43:20 | 12 |
| 01:43:22 | 13 |
| 01:58:14 | 14 |
| 01:58:14 | 15 |
| 01:58:18 | 16 |
| 01:58:22 | 17 |
| 01:58:24 | 18 |
| 01:58:26 | 19 |
| 01:58:31 | 20 |
| 01:58:31 | 21 |
| 01:58:37 | 22 |
| 01:58:41 | 23 |
| 01:58:43 | 24 |
| 01:58:46 | 25 |

1 Okay.  So it's twenty minutes to 2:00.  You can do that in ten

2 minutes?

3           MR. KUBIATOWSKI:  I can bring the transcript binder

4 up, your Honor.  What -- the transcripts are not going to

5 reflect what was played in court.  It's going to say that a

6 recording was played.  I can bring up the transcripts of the

7 recordings that were actually introduced.

8           THE COURT:  That's what I need.

9           MR. KUBIATOWSKI:  Great.

10           THE COURT:  All right.  Okay, Marshals, please keep

11 him here.  We're just going to take a break for a few minutes.

12           All right.  We'll take a break, and we'll see you in

13 a few minutes.

14           (Recess taken.)

15           THE CLERK:  07CR7, defendant number 1, USA versus

16 Scott Lewis.

17           MR. KUBIATOWSKI:  Steve Kubiatowski representing the

18 United States.

19           MR. CHERONIS:  Damon Cheronis and Tim Fiscella on

20 behalf of Mr. Lewis.

21           MS. GROTH:  Malissa Groth on behalf of Probation.

22           THE COURT:  Okay.  Mr. Lewis, we're going to continue

23 the sentencing hearing where we left off.

24           Mr. Kubiatowski, you were stating that the testimony

25 during the trial on the transcripts was for a 15-to-20-kilo

| | |
|---|---|
| 01:58:51 | 1 |
| 01:58:53 | 2 |
| 01:58:55 | 3 |
| 01:59:00 | 4 |
| 01:59:04 | 5 |
| 01:59:11 | 6 |
| 01:59:16 | 7 |
| 01:59:17 | 8 |
| 01:59:25 | 9 |
| 01:59:28 | 10 |
| 01:59:31 | 11 |
| 01:59:33 | 12 |
| 01:59:38 | 13 |
| 01:59:42 | 14 |
| 01:59:45 | 15 |
| 01:59:49 | 16 |
| 01:59:54 | 17 |
| 01:59:57 | 18 |
| 02:00:01 | 19 |
| 02:00:06 | 20 |
| 02:00:09 | 21 |
| 02:00:10 | 22 |
| 02:00:14 | 23 |
| 02:00:17 | 24 |
| 02:00:21 | 25 |

deal.  Can you support that now with the transcripts?

MR. KUBIATOWSKI:  Yes, your Honor.  In fact, the transcripts only use the phrase 20.  On the December 15th transcript, which was admitted into evidence, the first video meeting with Mr. Lewis, at line 82 to 83, Agent Gomez says:  I usually see 20, 20 kilos on the -- 20 bricks right there on the table.

Later on at lines 92 to 93, Agent Gomez continues:  I mean, I'm talking -- these are fucking kilos of cocaine, 20 kilos of cocaine is what I usually see right there, they're cutting up, okay.

Later on in that same video meeting, Agent Gomez says at line 299:  Well, you're going to hit this place for probably 20 keys, man, 20 keys of cocaine.

In the December 18th meeting where the defendant and his codefendant, Mr. Williams, is present, at line 169, Agent Gomez says:  But when I go in there, what I see -- I usually see, I'm talking 20 fucking bricks, 20 kilos of cocaine.

And later on, line 187 in that same meeting, December 18th:  Yeah, so I usually see them cutting probably 20.

Your Honor, I believe the only time the number 15 was ever introduced at trial was during the defendant's post-arrest statement where he indicated that he thought or expected to be robbing 15 to 20 kilograms of cocaine.  There

| | | |
|---|---|---|
| 02:00:27 | 1 | was not a number that was introduced during any of the |
| 02:00:29 | 2 | recorded conversations. |
| 02:00:30 | 3 | THE COURT:  Okay.  All right.  Now that we have the |
| 02:00:31 | 4 | transcript cites for the record, Mr. Cheronis, did you want to |
| 02:00:36 | 5 | embellish your argument, sir? |
| 02:00:38 | 6 | MR. CHERONIS:  I think it was more -- it was |
| 02:00:39 | 7 | consistent with what I had said initially.  Usually, usually, |
| 02:00:43 | 8 | probably, usually. |
| 02:00:44 | 9 | And what I was trying to articulate earlier, and if I |
| 02:00:47 | 10 | didn't do a proper job, I'll try to do my client justice here. |
| 02:00:51 | 11 | Locito in this case, his only real job -- let's believe this |
| 02:00:54 | 12 | wasn't a sting.  Let's believe this was a real conspiracy or |
| 02:00:57 | 13 | let's believe that he's working for a drug cartel.  By the |
| 02:01:00 | 14 | Government's own admission and by Locito's own admission, he |
| 02:01:03 | 15 | has no say in the amount of drugs that are going to be |
| 02:01:07 | 16 | delivered. |
| 02:01:07 | 17 | All he is in this conspiracy is a guy who gets a call |
| 02:01:11 | 18 | and has to go to a stash house.  In other words, even under |
| 02:01:14 | 19 | this fictitious scenario he's not the one who is driving the |
| 02:01:18 | 20 | amount of cocaine that's going to arrive at a specific place. |
| 02:01:20 | 21 | So he says words like probably, usually, usually, because he |
| 02:01:24 | 22 | can't know. |
| 02:01:25 | 23 | So my position is based on his inability to know, |
| 02:01:27 | 24 | based on his using the words probably, usually, based on using |
| 02:01:31 | 25 | those qualifiers, that the agreed-upon amount was not |

| | | |
|---|---|---|
| 02:01:35 | 1 | sufficiently shown and that, obviously, we're left with at |
| 02:01:39 | 2 | least the 5 kilograms that the jury returned a verdict on, but |
| 02:01:42 | 3 | I would suggest then that that would be the base offense |
| 02:01:44 | 4 | level, because to drive it up based on qualified usuallies and |
| 02:01:48 | 5 | probablies, I would suggest, would not be proper. |
| 02:01:53 | 6 | THE COURT: Okay. Anything else, Mr. Kubiatowski? |
| 02:01:55 | 7 | MR. KUBIATOWSKI: Again, the post-arrest statement, |
| 02:01:57 | 8 | he anticipated that he was going to be robbing 15 to 20 |
| 02:02:02 | 9 | kilograms of cocaine, your Honor, which corroborates what was |
| 02:02:05 | 10 | in the transcripts. |
| 02:02:06 | 11 | And there's -- it's a sting operation, your Honor. |
| 02:02:09 | 12 | So you're never going to know exactly what's there because it |
| 02:02:13 | 13 | doesn't exist to begin with. But based on these recorded |
| 02:02:16 | 14 | conversations and the defendants never asked whether or not |
| 02:02:21 | 15 | there was ever going to be more or less than 20 kilograms, I |
| 02:02:27 | 16 | believe it's reasonable to infer that they expected to be |
| 02:02:30 | 17 | stealing at least 20 kilograms of cocaine. |
| 02:02:33 | 18 | MR. CHERONIS: And I -- |
| 02:02:33 | 19 | MR. KUBIATOWSKI: That was the whole point of the |
| 02:02:35 | 20 | word usually. |
| 02:02:35 | 21 | MR. CHERONIS: And I don't want to be the annoying |
| 02:02:37 | 22 | kid in class who keeps raising his hand, but if I could just |
| 02:02:41 | 23 | add one final issue. |
| 02:02:42 | 24 | You sat in front of a jury trial, your Honor, a week |
| 02:02:44 | 25 | after ours, and a codefendant was tried in that case and I |

| | |
|---|---|
| 02:02:47 | 1 |

know it doesn't necessarily have any binding effect on you,

but they found that it wasn't even a measurable -- it wasn't

even 5 kilograms; it was only a measurable amount.  So I think

reasonable minds can certainly differ as to the amount here,

and the reason they can differ is because it was ambiguous.

THE COURT:  All right.  I think that the evidence

that was presented at trial was twofold.  I think that the

post-arrest statement does corroborate the previous recordings

and that he did admit that he believed it was between 15 and

20 kilograms, and that admission is supported by the

transcript cites that Mr. Kubiatowski stated.

I think that the clarifying language of usually see,

or I usually see them cutting, or I usually hit this place

for, is essentially his understanding that that would be the

approximate amount that he would be getting, which is 20

kilograms of cocaine, and that's supported by his own

admission.

So I do find that the amount of drugs that was agreed

upon in the house/stash house robbery was the 15 to 20

kilograms of cocaine.  Which is a level 34, correct?

MR. KUBIATOWSKI:  That's correct, your Honor.

THE COURT:  All right.  That moves us to the specific

offense characteristic of -- excuse me -- the adjustment for

role in the offense, which is the one where we have a dispute

regarding whether or not he deserves two levels for being an

02:04:29   1   organizer or leader.

02:04:30   2          I'll hear from the Government first.

02:04:32   3          MR. KUBIATOWSKI:  Your Honor, we, again, stated our

02:04:34   4   position, I think, clearly in our written memorandum.  It was

02:04:38   5   obvious during the course of the trial that the defendant had

02:04:42   6   gotten a crew and he actually brought that crew to two

02:04:49   7   subsequent meetings, on December 18th, 2006 and January 4th,

02:04:54   8   2007, namely, Vernon Williams, B, and subsequently on the day

02:04:59   9   of the arrest, January 4th, Lavoyce Billingsley.

02:05:03   10         Based on that recruitment, which the Seventh Circuit

02:05:06   11  has indicated is a factor that weighs heavily in favor of the

02:05:10   12  leadership enhancement, we believe that the two-level

02:05:12   13  enhancement is appropriate in this instance.

02:05:14   14         THE COURT:  All right.  Mr. Cheronis?

02:05:16   15         MR. CHERONIS:  We'll rely on our written memorandum

02:05:19   16  for this portion, Judge.

02:05:20   17         THE COURT:  Okay.  I think the evidence was clear

02:05:22   18  that Mr. Lewis brought in Mr. Williams and Mr. Billingsley.

02:05:28   19  He was the only one who had the dealings with the confidential

02:05:31   20  informant and the only reason that Williams and Billingsley

02:05:35   21  became involved, and that recruitment gives him the two-level

02:05:38   22  enhancement.  So he is going to receive those.

02:05:40   23         The next is the adjustment for obstruction of

02:05:43   24  justice.  And that is for his testimony at trial regarding

02:05:48   25  what occurred to him with the CI during the months leading up

| | | |
|---|---|---|
| 02:05:53 | 1 | to his involvement in the robbery. |
| 02:05:55 | 2 | And I'll hear from the Government first. |
| 02:05:57 | 3 | MR. KUBIATOWSKI: Your Honor, as we set forth in our |
| 02:05:59 | 4 | written memorandum, the defendant took the stand, and I |
| 02:06:09 | 5 | believe it's very clear that the jury must have concluded that |
| 02:06:11 | 6 | his testimony was false, based on its verdict on Counts 1 and |
| 02:06:16 | 7 | 3. |
| 02:06:17 | 8 | Some of the instances during his cross-examination, |
| 02:06:22 | 9 | when it was apparent that his testimony was false, was his |
| 02:06:27 | 10 | repeated protestations that he was scared of the confidential |
| 02:06:33 | 11 | informant, Rojo, when on January 4th he still went to see Rojo |
| 02:06:38 | 12 | even though he had allegedly upset him by saying that he was |
| 02:06:42 | 13 | going to back out of the robbery. |
| 02:06:45 | 14 | His story that he was unable to obtain a thousand |
| 02:06:50 | 15 | dollars to pay the debt that he allegedly owed Rojo. His |
| 02:06:55 | 16 | story that he was unable to get that money from any other |
| 02:06:57 | 17 | source and that he was willing to risk his own life by rushing |
| 02:07:04 | 18 | a stash house to pay a $1,000 drug debt, these are instances |
| 02:07:10 | 19 | which the jury must have disbelieved in order to reach the |
| 02:07:15 | 20 | verdict that it did. And accordingly, under the guidelines, I |
| 02:07:18 | 21 | believe the obstruction enhancement would apply. |
| 02:07:20 | 22 | THE COURT: Okay. Mr. Cheronis? |
| 02:07:22 | 23 | MR. CHERONIS: I could not find a point in this |
| 02:07:24 | 24 | sentencing memorandum where I disagree more with the |
| 02:07:27 | 25 | Government than the enhancement for obstruction of justice. |

| | | |
|---|---|---|
| 02:07:30 | 1 | It is absolutely possible that the jury believed every word of |
| 02:07:35 | 2 | what Scott Lewis said and still decided that he was not |
| 02:07:38 | 3 | coerced and that he was not entrapped. |
| 02:07:41 | 4 | He got on the witness stand and he did not say that, |
| 02:07:46 | 5 | you know, he wasn't involved in this. He gave his reasons for |
| 02:07:49 | 6 | being involved. And the Government's claim that Scott Lewis' |
| 02:07:54 | 7 | testimony -- and I believe the language they use in the |
| 02:07:58 | 8 | sentencing memorandum -- was absurd on its face, well, I take |
| 02:08:01 | 9 | issue with that and I do it for several reasons. |
| 02:08:05 | 10 | Initially -- and I made a footnote in the sentencing |
| 02:08:06 | 11 | memorandum -- the Government has turned over to defense |
| 02:08:09 | 12 | counsel subsequent to the trial in this case information |
| 02:08:14 | 13 | regarding Rojo, that he denies, that has to do with a |
| 02:08:19 | 14 | different case. But the information -- and I have copies of |
| 02:08:22 | 15 | the 302s, I didn't want to include them in the sentencing |
| 02:08:25 | 16 | package -- but basically that Rojo was selling drugs, dealing |
| 02:08:28 | 17 | drugs, intimidating people. This is information that a |
| 02:08:31 | 18 | different witness, who had nothing to do with Lewis, told the |
| 02:08:35 | 19 | Government. |
| 02:08:35 | 20 | And -- |
| 02:08:36 | 21 | THE COURT: During the time period, during the same |
| 02:08:38 | 22 | time period? |
| 02:08:39 | 23 | MR. CHERONIS: During -- during -- |
| 02:08:40 | 24 | MR. KUBIATOWSKI: A year later. |
| 02:08:41 | 25 | MR. CHERONIS: A year and a half later. |

02:08:43    1        MR. KUBIATOWSKI:  A year and a half later.

02:08:44    2        MR. CHERONIS:  Not during the same time period, but

02:08:46    3   it certainly, to some extent, corroborates what Lewis said.

02:08:46    4   And, of course, Rojo denied it, so there was no issue of --

02:08:53    5   making issue out of it.  It happened later anyway.  But we

02:08:55    6   have information now --

02:08:56    7        THE COURT:  So we have another witness testifying

02:08:58    8   about Rojo's involvement with drug dealing that -- what you're

02:09:03    9   saying is that would corroborate his statement to the jury.

02:09:06   10        MR. CHERONIS:  There is a person who was debriefed by

02:09:09   11   the Government.  And that person basically said that while

02:09:13   12   Rojo was an informant for the Government, he was also really a

02:09:18   13   drug dealer.  He was also dealing drugs.  He was also doing

02:09:23   14   things that would be consistent with what Mr. Lewis said, so

02:09:27   15   it didn't just come out of holed cloth.

02:09:30   16        I mean, there was another person out there saying

02:09:33   17   Rojo was selling drugs and being an informant, working both

02:09:35   18   sides of the street.

02:09:35   19        THE COURT:  Can I see the 302?

02:09:45   20        MR. CHERONIS:  We do have a copy for you.

02:09:59   21        Here it is.

02:10:02   22        THE COURT:  Thank you.

02:11:20   23        Okay.  You can pass that back, please.

02:11:23   24        All right.  Anything you want to add to the

02:11:25   25   obstruction, either side?

| | | |
|---|---|---|
| 02:11:27 | 1 | MR. CHERONIS:  No. |
| 02:11:28 | 2 | MR. KUBIATOWSKI:  No, your Honor. |
| 02:11:28 | 3 | THE COURT:  Okay.  I agree with Mr. Cheronis that |
| 02:11:32 | 4 | that testimony could very easily have been interpreted by the |
| 02:11:37 | 5 | jury to meaning that it was not legally sufficient to rise to |
| 02:11:42 | 6 | the level of extraordinary inducement and, therefore, I don't |
| 02:11:51 | 7 | think that they needed to inherently need to find that he was |
| 02:11:54 | 8 | lying. |
| 02:11:54 | 9 | I think he admitted to his conduct, and he gave his |
| 02:11:57 | 10 | reasons for the conduct.  And I think that that is not |
| 02:12:00 | 11 | inconsistent with the jury's conviction, because I think the |
| 02:12:04 | 12 | jury could have believed him and said in spite of that, it is |
| 02:12:11 | 13 | insufficient to have been entrapment.  And, therefore, I'm not |
| 02:12:16 | 14 | giving a two-level enhancement for obstruction of justice. |
| 02:12:18 | 15 | All right.  That brings us to an adjusted offense |
| 02:12:21 | 16 | level of 36. |
| 02:12:22 | 17 | And we are now at the other count, which is for the |
| 02:12:26 | 18 | firearm used in the commission of the trafficking offense and |
| 02:12:31 | 19 | the conviction, I believe, there is to run consecutive to any |
| 02:12:38 | 20 | sentence imposed upon the drug robbery conviction. |
| 02:12:42 | 21 | And so do we get points for grouping on that? |
| 02:12:46 | 22 | MR. KUBIATOWSKI:  Your Honor, I'm sorry to interrupt. |
| 02:12:50 | 23 | Acceptance of responsibility was an issue that was raised by |
| 02:12:53 | 24 | the defendant as well. |
| 02:12:53 | 25 | THE COURT:  Oh, okay.  Go ahead, Mr. Cheronis. |

| | | |
|---|---|---|
| 02:12:56 | 1 | MR. CHERONIS: If I may, your Honor, regarding |
| 02:12:58 | 2 | acceptance of responsibility, and I've read the cases that |
| 02:13:00 | 3 | basically say that entrapment is kind of the antithesis of |
| 02:13:06 | 4 | acceptance of responsibility, because what somebody is saying |
| 02:13:07 | 5 | is, I did it but it absolutely wasn't my fault. I was |
| 02:13:10 | 6 | coerced. I was pressured. |
| 02:13:12 | 7 | But I think if you look at this on a case specific |
| 02:13:15 | 8 | scenario, which is what I'm asking you to do, is Mr. Lewis did |
| 02:13:20 | 9 | say the Government played a hand in what he did. But at the |
| 02:13:23 | 10 | same point, I mean, there were times when he was being |
| 02:13:26 | 11 | cross-examined and, you know, Mr. Kubiatowski was asking |
| 02:13:28 | 12 | questions that I would suggest he was expecting a different |
| 02:13:31 | 13 | response from Mr. Lewis, but Mr. Lewis would say, Oh, no, I |
| 02:13:34 | 14 | was going to rob it. I knew what was going on, or, I was |
| 02:13:37 | 15 | going to do it. |
| 02:13:37 | 16 | I mean, this is kind of almost that hybrid case where |
| 02:13:41 | 17 | all he said was, You know what? I was involved but the |
| 02:13:45 | 18 | Government pushed me over the edge. I don't necessarily think |
| 02:13:47 | 19 | that doesn't mean he accepted responsibility for it. What he |
| 02:13:52 | 20 | was saying was, The Government shared responsibility, and |
| 02:13:54 | 21 | maybe the Government was more responsible. |
| 02:13:57 | 22 | And because he went to trial and because he asked a |
| 02:14:00 | 23 | jury -- who after three days rejected his defense, I don't |
| 02:14:03 | 24 | think that means that he didn't accept responsibility. |
| 02:14:07 | 25 | He accepted their verdict, and he asked them to judge |

| | | |
|---|---|---|
| 02:14:11 | 1 | him under the law and judge him under the facts of this |
| 02:14:14 | 2 | specific case.  And I would request -- and the Court can give |
| 02:14:18 | 3 | acceptance of responsibility after trial.  It doesn't happen |
| 02:14:21 | 4 | often.  I know that.  But we're requesting it, based on the |
| 02:14:24 | 5 | specific facts that you saw and that played out throughout the |
| 02:14:27 | 6 | course of this trial. |
| 02:14:28 | 7 | THE COURT:  Well, first, I think we need to verify |
| 02:14:30 | 8 | between the two kinds of acceptance.  Your argument really |
| 02:14:34 | 9 | goes to the two levels of acceptance and not to the first, |
| 02:14:37 | 10 | because -- I mean, the third level.  Because the third point |
| 02:14:40 | 11 | of acceptance essentially saves the Government of the trouble |
| 02:14:43 | 12 | of going through trial and doing the work. |
| 02:14:45 | 13 | So, really, you're talking about two points for |
| 02:14:48 | 14 | acceptance, which you say is consistent with the testimony |
| 02:14:50 | 15 | where he did admit to his involvement and simply required the |
| 02:14:54 | 16 | Government to step up and do its case as it's required to do |
| 02:15:00 | 17 | and meet its burden.  Am I hearing you correctly? |
| 02:15:03 | 18 | MR. CHERONIS:  Exactly.  I would like three points, |
| 02:15:05 | 19 | but I think we'll have enough trouble getting two.  But I |
| 02:15:06 | 20 | think the two is where we're certainly requesting, because a |
| 02:15:08 | 21 | trial is not necessarily inconsistent with the acceptance of |
| 02:15:11 | 22 | responsibility. |
| 02:15:11 | 23 | THE COURT:  Okay.  Mr. Kubiatowski? |
| 02:15:12 | 24 | MR. KUBIATOWSKI:  Your Honor, the Seventh Circuit |
| 02:15:14 | 25 | precedent that we set out in our memorandum, particularly the |

| | | |
|---|---|---|
| 02:15:17 | 1 | <u>Rector</u> case, which Mr. Cheronis alluded to.  Entrapment by |
| 02:15:21 | 2 | definition precludes the acceptance of responsibility in |
| 02:15:27 | 3 | almost every instance, and Seventh Circuit precedence has been |
| 02:15:31 | 4 | right down the line on this. |
| 02:15:32 | 5 | It's basically saying it's -- I did it but it's |
| 02:15:36 | 6 | somebody else's fault.  And here he's saying that, The |
| 02:15:38 | 7 | Government pushed me over the edge, but that's not an |
| 02:15:41 | 8 | acceptance of responsibility consistent with Seventh Circuit |
| 02:15:43 | 9 | case law. |
| 02:15:44 | 10 | THE COURT:  Right.  I think the Seventh Circuit is |
| 02:15:47 | 11 | very clear on this one, which essentially says, When you go |
| 02:15:51 | 12 | forward with the entrapment defense, you're essentially |
| 02:15:55 | 13 | abdicating that responsibility.  You're saying, as they said |
| 02:15:59 | 14 | in the <u>Rector</u> case, that I'm not the one that's responsible. |
| 02:16:02 | 15 | It's somebody else's responsibility.  It's somebody else's |
| 02:16:04 | 16 | fault.  And, therefore, I am going to deny the request to give |
| 02:16:09 | 17 | an acceptance of responsibility. |
| 02:16:09 | 18 | That leaves us to a level 36, and I believe there is |
| 02:16:14 | 19 | a two-point grouping requirement, correct? |
| 02:16:20 | 20 | (No response.) |
| 02:16:20 | 21 | THE COURT:  Because Count 3 is excluded from |
| 02:16:23 | 22 | grouping -- oh, no, there is not.  It's excluded, so we're at |
| 02:16:26 | 23 | 36. |
| 02:16:26 | 24 | Now, let's talk about his criminal history.  I know |
| 02:16:29 | 25 | Mr. Cheronis is concerned about it being overrepresented, and |

02:16:33  1  I'd like to go through each one of these convictions that's

02:16:37  2  counting.

02:16:38  3         We have the unlawful possession of weapons by a felon

02:16:42  4  when he was twenty years old, and that he received two --

02:16:46  5  excuse me -- three points for.  He was found guilty and

02:16:50  6  sentenced to eight and a half years.

02:16:52  7         There is the one point that he receives for the

02:16:56  8  giving of a false name and date of birth to a law enforcement

02:17:00  9  officer where he was found guilty and received 40 days.

02:17:04  10        There is the three points for the theft in the

02:17:08  11  Circuit Court of Adams County where he was originally

02:17:16  12  sentenced to a matter of days, but then found guilty of

02:17:19  13  violating probation and got two years.

02:17:23  14        And then there's the two points for the domestic

02:17:26  15  battery where he received 270 days.

02:17:30  16        And that has led him to a criminal history category

02:17:38  17  of IV, correct?

02:17:39  18        MR. KUBIATOWSKI:  That's correct, your Honor.

02:17:39  19        MR. CHERONIS:  Yes.

02:17:40  20        THE COURT:  All right.  Now, let me hear from you,

02:17:42  21  first, Mr. Cheronis.

02:17:44  22        MR. CHERONIS:  As I stated in the memorandum, it was

02:17:46  23  that odd -- that odd scenario during an entrapment trial where

02:17:50  24  a defendant, to some extent, can get on the witness stand and

02:17:53  25  explain to the jury, as Mr. Lewis did, at least some of the

| | |
|---|---|
| 02:17:56 | 1 |
| 02:17:58 | 2 |
| 02:18:00 | 3 |
| 02:18:04 | 4 |
| 02:18:07 | 5 |
| 02:18:12 | 6 |
| 02:18:16 | 7 |
| 02:18:19 | 8 |
| 02:18:24 | 9 |
| 02:18:28 | 10 |
| 02:18:31 | 11 |
| 02:18:32 | 12 |
| 02:18:38 | 13 |
| 02:18:42 | 14 |
| 02:18:46 | 15 |
| 02:18:53 | 16 |
| 02:18:56 | 17 |
| 02:18:58 | 18 |
| 02:19:01 | 19 |
| 02:19:05 | 20 |
| 02:19:10 | 21 |
| 02:19:15 | 22 |
| 02:19:20 | 23 |
| 02:19:20 | 24 |
| 02:19:22 | 25 |

conduct that led to those convictions.

I have not received anything from the Government to dispute Mr. Lewis' testimony as to what happened. I believe he testified that regarding the felon in possession of a firearm count, he was at a party and there was a struggle with somebody with a gun, that he basically wrestled the gun away and fired it into the air. That is certainly different than somebody who owns a gun, is a convicted felon, and is either carrying it on his person or driving around. I mean, that specific instance, I would suggest, mitigates the actual criminal history point that he receives.

Also, the theft case -- one of the theft cases -- and I think this was actually excluded from trial -- but it was the issue where Mr. Lewis was, like, twenty years old and he broke into a bar with some friends and took some liquor.

I don't want to say 90 percent of my friends in high school would probably be guilty of that same crime, but it was something that was like a youthful indiscretion, I would suggest, as opposed to some type of serious, serious theft. It doesn't necessarily mean it's not important, but I think it can be taken with a grain of salt. So I think that those two instances are really overrepresented by the amount of points that he receives for them.

THE COURT: Well, I don't even -- I'm not sure where those facts are, because I have the one burglary conviction

02:19:27    1    when he was seventeen, for which he didn't receive any points.

02:19:32    2    He was found guilty, but he didn't get any points in his

02:19:36    3    criminal history for that.

02:19:37    4            Then we have the unlawful possession of a weapon,

02:19:40    5    which is the discharge of the firearm where you provided the

02:19:45    6    facts that he wrestled it away from someone.

02:19:49    7            Then there's the giving of the false name to the

02:19:53    8    police.  And then there's the Christmas present theft when he

02:20:00    9    was 24 years old.

02:20:02   10            MR. CHERONIS:  And that theft, Judge, the Christmas

02:20:05   11    present theft, which sounds really bad, but he was actually, I

02:20:09   12    believe, found to be in possession of something that was

02:20:11   13    stolen as opposed to having broken into the house, I believe,

02:20:15   14    was what he ended up pleading guilty to, being in possession

02:20:19   15    of stolen goods, and the residential burglary and those other

02:20:22   16    issues were dropped.

02:20:24   17            THE COURT:  And then the last one is the domestic

02:20:27   18    battery.  So I don't know where the liquor store felon --

02:20:31   19            MR. CHERONIS:  That --

02:20:32   20            THE COURT:  I don't think you got any points for it.

02:20:34   21            MR. CHERONIS:  But the felon in possession of a

02:20:36   22    firearm, I believe, was something that was counted --

02:20:38   23            THE COURT:  Okay.

02:20:38   24            MR. CHERONIS:  -- towards his total number.

02:20:40   25            THE COURT:  Okay.  Mr. Kubiatowski?

| | | |
|---|---|---|
| 02:20:43 | 1 | MR. KUBIATOWSKI:  Your Honor, the defendant, we |
| 02:20:45 | 2 | believe, has gotten the benefit of the doubt as far as his |
| 02:20:47 | 3 | criminal history points here, two convictions for which he |
| 02:20:50 | 4 | received no points. |
| 02:20:52 | 5 | THE COURT:  What, the juvenile one? |
| 02:20:54 | 6 | MR. KUBIATOWSKI:  Right. |
| 02:20:54 | 7 | THE COURT:  And then which other one, the deceptive |
| 02:20:57 | 8 | practices? |
| 02:20:58 | 9 | MR. KUBIATOWSKI:  That's correct, your Honor. |
| 02:20:59 | 10 | THE COURT:  And why did he not get points for that? |
| 02:21:03 | 11 | MR. KUBIATOWSKI:  I think it was -- both of them were |
| 02:21:06 | 12 | on account of age, your Honor. |
| 02:21:10 | 13 | THE COURT:  Because of age? |
| 02:21:11 | 14 | MR. KUBIATOWSKI:  Wait, the deceptive practices -- |
| 02:21:14 | 15 | THE COURT:  Well, it doesn't make sense, because |
| 02:21:15 | 16 | the -- |
| 02:21:15 | 17 | MR. KUBIATOWSKI:  The first one, the burglary from |
| 02:21:17 | 18 | 1991 was because of its age. |
| 02:21:19 | 19 | THE COURT:  Okay.  What about the deceptive |
| 02:21:21 | 20 | practices? |
| 02:21:21 | 21 | MR. KUBIATOWSKI:  The deceptive practice, no, that |
| 02:21:31 | 22 | was a trespass that he wasn't -- but that's correct, it's not |
| 02:21:34 | 23 | supposed to count. |
| 02:21:36 | 24 | The deceptive practice was giving the false name, and |
| 02:21:39 | 25 | he did receive a point for that. |

| | | |
|---|---|---|
| 02:21:40 | 1 | THE COURT:  No.  I'm referring to line 235, the |
| 02:21:46 | 2 | deceptive practice in the Circuit Court of Adams County where |
| 02:21:50 | 3 | he pled guilty when he was 26 years old for the check, |
| 02:21:55 | 4 | $155.13, an Athlete's Foot account. |
| 02:22:00 | 5 | MR. KUBIATOWSKI:  I believe that wasn't counted just |
| 02:22:02 | 6 | because that's classified as one of the types of convictions |
| 02:22:05 | 7 | that you do not receive any criminal history points for. |
| 02:22:08 | 8 | THE COURT:  Oh, okay. |
| 02:22:09 | 9 | MR. KUBIATOWSKI:  There's a number -- |
| 02:22:10 | 10 | THE COURT:  And is that the benefit you're saying |
| 02:22:12 | 11 | then? |
| 02:22:14 | 12 | (No response.) |
| 02:22:14 | 13 | THE COURT:  What is the benefit of the two |
| 02:22:15 | 14 | convictions -- |
| 02:22:16 | 15 | MR. KUBIATOWSKI:  I'll strike that comment, your |
| 02:22:16 | 16 | Honor. |
| 02:22:18 | 17 | THE COURT:  Okay.  So then the criminal history |
| 02:22:22 | 18 | category V is substantiated by what? |
| 02:22:23 | 19 | MR. KUBIATOWSKI:  It's IV, it's a criminal history |
| 02:22:27 | 20 | IV, your Honor. |
| 02:22:27 | 21 | THE COURT:  I'm sorry, IV. |
| 02:22:27 | 22 | MR. KUBIATOWSKI:  He's got nine points, which is at |
| 02:22:30 | 23 | the top end of that history. |
| 02:22:34 | 24 | He's had opportunities to rehabilitate, even with the |
| 02:22:41 | 25 | four convictions that are having been counted towards the |

| | | |
|---|---|---|
| 02:22:46 | 1 | criminal history.  He's had opportunities.  He's had brushes |
| 02:22:49 | 2 | with the criminal justice system, yet he continues or has |
| 02:22:53 | 3 | continued to break the law. |
| 02:22:57 | 4 | So we believe that the criminal history, as reported, |
| 02:23:03 | 5 | criminal history category of IV with nine points, does |
| 02:23:06 | 6 | sufficiently represent his criminal history. |
| 02:23:08 | 7 | THE COURT:  Okay.  Anything you want to add, sir? |
| 02:23:10 | 8 | MR. CHERONIS:  I don't necessarily want to get into |
| 02:23:12 | 9 | my 3553(a) factors yet -- |
| 02:23:14 | 10 | THE COURT:  Okay. |
| 02:23:14 | 11 | MR. CHERONIS:  -- but for the reasons stated in the |
| 02:23:16 | 12 | memorandum and for what I've stated earlier, I would suggest |
| 02:23:18 | 13 | that it's overrepresented. |
| 02:23:19 | 14 | THE COURT:  Okay.  I don't see any sufficient basis |
| 02:23:22 | 15 | to challenge the points that he received for his criminal |
| 02:23:27 | 16 | history category IV, such that, for example, something was |
| 02:23:31 | 17 | overcounted, where there was another court case where it was |
| 02:23:34 | 18 | counted twice, et cetera. |
| 02:23:36 | 19 | So I will factor in the type of criminal history that |
| 02:23:40 | 20 | he has when I review the 3553 factors, but he'll remain a |
| 02:23:45 | 21 | category IV, which means we're at a level 36, category IV, and |
| 02:23:50 | 22 | he's facing 262 months to 327 months. |
| 02:24:02 | 23 | Does everyone agree? |
| 02:24:05 | 24 | MR. KUBIATOWSKI:  The Government agrees, your Honor. |
| 02:24:08 | 25 | THE COURT:  Okay. |

| | |
|---|---|
| 02:24:08 | 1 |
| 02:24:09 | 2 |
| 02:24:11 | 3 |
| 02:24:16 | 4 |
| 02:24:18 | 5 |
| 02:24:20 | 6 |
| 02:24:21 | 7 |
| 02:24:26 | 8 |
| 02:24:31 | 9 |
| 02:24:35 | 10 |
| 02:24:39 | 11 |
| 02:24:43 | 12 |
| 02:24:46 | 13 |
| 02:24:48 | 14 |
| 02:24:51 | 15 |
| 02:24:56 | 16 |
| 02:24:59 | 17 |
| 02:25:02 | 18 |
| 02:25:06 | 19 |
| 02:25:12 | 20 |
| 02:25:17 | 21 |
| 02:25:24 | 22 |
| 02:25:29 | 23 |
| 02:25:32 | 24 |
| 02:25:39 | 25 |

MR. KUBIATOWSKI:  That's on Count 1.

THE COURT:  That's on Count 1.

Now, Count 2 is a mandatory minimum or a statutory sentence of 60 months that's subsequent to any sentence.

Is everyone in agreement with that?

MR. CHERONIS:  Yes.

THE COURT:  Okay.  So the defendant is facing 262 plus 60 months on the low end, which is 322 months in prison.

And now I will hear from the Government as to where you believe he should be sentenced, pursuant to taking into account all of the 3553 factors that the Court must now take into account.

MR. KUBIATOWSKI:  Your Honor, we respectfully recommend a sentence within the guidelines range.  When reviewing the 3553(a) factors, the seriousness of the offense is one of the factors that the Court must consider.

This was a very serious crime.  It's a crime that involved violence.  It's a crime that involved rushing into a stash house where the occupants would be forcibly subdued at gunpoint, stripped, tied down, and then 20 kilograms of cocaine -- cocaine worth in excess of $400,000, based on a $20,000 value per kilo -- would be stolen.

This is an offense where the defendant recruited additional individuals into the conspiracy.

The defendant has shown, with his criminal history,

| | | |
|---|---|---|
| 02:25:47 | 1 | that he recidivates. |
| 02:25:52 | 2 | Deterrence, another one of the factors that the Court |
| 02:25:55 | 3 | must consider, is critical here especially for -- in an |
| 02:26:01 | 4 | instance like the defendant, where it's been shown that his -- |
| 02:26:08 | 5 | that he has a history of -- with the criminal justice system, |
| 02:26:15 | 6 | that continues to break the law, and this time he decided to |
| 02:26:18 | 7 | break the law and engage in a particularly violent and serious |
| 02:26:23 | 8 | crime. |
| 02:26:25 | 9 | Now, certainly, we understand that he has a support |
| 02:26:27 | 10 | network. He has a family. He should have relied on that |
| 02:26:32 | 11 | support network rather than put his own life at risk by |
| 02:26:38 | 12 | engaging in this type of violent conduct. |
| 02:26:42 | 13 | The seriousness of the offense, the deterrence, which |
| 02:26:46 | 14 | is much needed to keep Mr. Lewis off the streets and keeping |
| 02:26:52 | 15 | the public safe would, in the Government's view, warrant a |
| 02:26:56 | 16 | sentence within the guidelines range. |
| 02:26:59 | 17 | THE COURT: Okay. Mr. Cheronis? |
| 02:27:02 | 18 | MR. CHERONIS: Thank you, Judge Kendall. This was a |
| 02:27:06 | 19 | difficult sentencing to prepare for for a lot of reasons. I |
| 02:27:12 | 20 | think you've certainly sat in front of enough jury trials and |
| 02:27:15 | 21 | tried enough jury trials, as a prosecutor, to know that -- and |
| 02:27:18 | 22 | I said this during my closing argument -- everything's not |
| 02:27:21 | 23 | black and white. |
| 02:27:22 | 24 | And I think if ever there is a case where you're |
| 02:27:26 | 25 | dealing with a very gray area, you're talking about this case. |

| | |
|---|---|
| 02:27:30 | 1 |
| 02:27:34 | 2 |
| 02:27:39 | 3 |
| 02:27:43 | 4 |
| 02:27:48 | 5 |
| 02:27:51 | 6 |
| 02:27:58 | 7 |
| 02:28:03 | 8 |
| 02:28:07 | 9 |
| 02:28:11 | 10 |
| 02:28:15 | 11 |
| 02:28:17 | 12 |
| 02:28:19 | 13 |
| 02:28:22 | 14 |
| 02:28:24 | 15 |
| 02:28:28 | 16 |
| 02:28:32 | 17 |
| 02:28:35 | 18 |
| 02:28:38 | 19 |
| 02:28:40 | 20 |
| 02:28:42 | 21 |
| 02:28:45 | 22 |
| 02:28:49 | 23 |
| 02:28:52 | 24 |
| 02:28:56 | 25 |

And in almost every sentencing I've ever handled -- and I don't want to stray too far from it -- but, you know, I am of the opinion that there is a time to be as remorseful and circumspect and apologetic as possible.  And I don't necessarily think Mr. Lewis disagrees with me, but I will say this, that the case that you saw was not derived or started or, as Mr. Kubiatowski just said, decided by Scott Lewis.

And I did point out in my sentencing memorandum some issues that I would request that you take into consideration regarding sentencing entrapment and sentencing manipulation. But as 3553(a) talks about, you have to talk about the nature and the circumstances of the offense.

And I would suggest that you also have to look at the investigation in this case and what happened and what happened at trial, and some of the stuff that has come up subsequent to that, that we now know at least -- maybe not know, but there are other things out there about this Rojo character who -- that somewhat corroborated what Mr. Lewis said.

And there was a great letter that was written -- and there's a question that I think Mr. Lewis is going to be asking himself, that I've asked myself, that possibly you've asked yourself, if Mr. Lewis never met Rojo, would he be here? Would he be in a jail somewhere?  Would he be begging a Court for mercy?  Or would he have continued upon his education? Would he have tried to get custody of his daughter?  And would

| | |
|---|---|
| 02:28:59 | 1 |
| 02:29:03 | 2 |
| 02:29:06 | 3 |
| 02:29:10 | 4 |
| 02:29:14 | 5 |
| 02:29:16 | 6 |
| 02:29:20 | 7 |
| 02:29:21 | 8 |
| 02:29:24 | 9 |
| 02:29:28 | 10 |
| 02:29:30 | 11 |
| 02:29:33 | 12 |
| 02:29:38 | 13 |
| 02:29:41 | 14 |
| 02:29:44 | 15 |
| 02:29:46 | 16 |
| 02:29:49 | 17 |
| 02:29:50 | 18 |
| 02:29:55 | 19 |
| 02:29:58 | 20 |
| 02:30:02 | 21 |
| 02:30:05 | 22 |
| 02:30:08 | 23 |
| 02:30:10 | 24 |
| 02:30:14 | 25 |

he have walked the line, so to speak?  And we don't know that.

You know, the world is a difficult place enough to live in for some people without having people like Rojo out there who are preying on them.  And there are -- and I've thought about this.  There are places for sting separations. I'm not saying that they're completely invaluable.

I mean, we've watched the news recently.  I mean, sting operations have been responsible for stopping possible terrorist attacks, and I'm not going to sit here as an American citizen and say they are not somewhat worthwhile.

But in this case and the facts of this case, I mean, this, crew, Lewis, Williams, and Billingsley?  I mean, it's almost like -- and I'm not trying to make light of this -- it's like the Three Stooges.  I mean, they were -- it was clear that they were there, and it was clear that they were not just there by their own doing.  And I think that this Court can take that into consideration.

That being said, Mr. Lewis, even if he was coerced, even if he was entrapped, made some horrible decisions throughout the course of the facts that led up to this trial. He made some horrible decisions.  He should have gone to the police, if he was afraid for his life.  He should have gotten the money from someone else.  He should have done something. He should have stopped.  And for that he's going to have a lot of time to think about it.  But I think you cannot take away

02:30:18   1    the type of investigation that went into this.

02:30:21   2         And I ask you to take that into consideration with

02:30:24   3    sentencing entrapment, with sentencing manipulation. I mean,

02:30:27   4    they sat back there probably at a table at an ATF office and

02:30:30   5    said, Hey, 25 kilograms, that's going to jack up the

02:30:34   6    guidelines. I mean, was that necessary? They came up with

02:30:36   7    this number.

02:30:36   8         And that puts Mr. Lewis in what I would consider a

02:30:41   9    Draconian sentence, a very high level. So I would ask you to

02:30:45  10    look at the nature and circumstances of this specific offense

02:30:48  11    from the facts you heard at trial. And I would suggest that

02:30:50  12    with everything you saw, with Agent Gomez, with his not

02:30:55  13    working audio equipment, with all that other stuff he said on

02:30:58  14    the witness stand, with -- speaking of absurd testimony --

02:31:01  15    with that testimony, you can have a variance pursuant to

02:31:06  16    3553(a). Because my position on what the jury did in this

02:31:09  17    case was they probably didn't like anybody in this case, but

02:31:12  18    they said, The tapes were pretty bad. So I think the nature

02:31:15  19    and circumstances of this case could actually warrant a

02:31:18  20    variance or a departure.

02:31:21  21         As far as Mr. Lewis is concerned, there is some very

02:31:24  22    interesting letters that were sent to this Court, and I've

02:31:26  23    seen a lot of letters and I've compiled them. And I know you

02:31:29  24    took time to read them, but I would like to point out a few, I

02:31:34  25    guess, excerpts from the letters, because this shows the other

1  side of Scott Lewis.

2       I mean, I guess this is kind of the Scott Lewis that

3  could have been, that once was and could have been.  I mean,

4  these are letters from people who don't just say, Yeah, he was

5  a good guy.  He was a guy who would cut my grass for me if I

6  had a bum ankle.

7       I mean, you have a letter from a man who Scott Lewis

8  raised his son.  I mean, how often do you see that when the

9  father of a child that somebody else raises actually writes a

10  letter?  Scott Lewis is raising a kid that isn't his.  It's

11  Rachel Roberts' son, and Scott Lewis is living with that

12  family and treating him as his son.  And the real father

13  writes a letter to a judge saying, Scott Lewis is a great guy

14  because he raised my son.

15       That's the history and characteristics we're talking

16  about at this point.  The verdict's in, but now we can look at

17  the person that Scott Lewis was when this happened.  He was a

18  person who would, you know, put the kids to bed.  He was the

19  person who would stay home.  He was a person who was

20  respectful.

21       And, I mean, these aren't just short letters, and I

22  know you read them.  And, you know, these are letters that

23  really can touch, I would suggest, the judge.  And the reason

24  I'm saying that, I was just at a seminar and Judge Coar said

25  that letters are extremely important, and I think they are,

02:32:57   1    because I only know Scott Lewis through being appointed on

02:33:00   2    this case.

02:33:01   3         I haven't lived with him.  I didn't know him before

02:33:03   4    this.  But people who have known him have stepped up for him

02:33:06   5    and said, You know what? He's not that bad.  He's a person --

02:33:10   6    he's a person who was a son.  He was a person who is a father.

02:33:13   7    He was a person who was trying to get his life back on track

02:33:15   8    and it was horribly derailed.

02:33:17   9         And I would suggest to the Court that looking at

02:33:21  10    these letters paints a picture of Scott Lewis as somebody who

02:33:26  11    made a horrible mistake but is not a throw-away person.  And I

02:33:30  12    would ask that his history and characteristics play into your

02:33:35  13    decision to possibly come below the guidelines.

02:33:38  14         Something I didn't include in my memorandum but

02:33:41  15    looking at the pretrial report or the probation report,

02:33:44  16    there's also a history of substance abuse, and you can take

02:33:49  17    that into account.

02:33:49  18         Mr. Lewis, as he testified to but as is borne out in

02:33:51  19    the pretrial report, was in and out of Sheridan Hospital.  He

02:33:57  20    smoked marijuana on a daily basis.  He struggled with

02:34:01  21    substance abuse.  And I think that a continuing pattern that

02:34:04  22    criminal lawyers see and judges see and prosecutors see, is

02:34:09  23    that substance abuse can ruin your lives in more ways than

02:34:14  24    one.  I mean, he wasn't thinking clearly possibly from a

02:34:16  25    lifetime of using drugs or having used drugs and gotten off it

| | | |
|---|---|---|
| 02:34:20 | 1 | and then getting reintroduced to it.  So I think the Court can |
| 02:34:25 | 2 | take that into consideration as well, as a factor that may |
| 02:34:27 | 3 | warrant a departure. |
| 02:34:29 | 4 | If I may, I have some notes. |
| 02:34:44 | 5 | We do have some photographs that were -- you saw them |
| 02:34:47 | 6 | during the trial.  I think you remember.  We were going to try |
| 02:34:49 | 7 | to introduce them, and then you asked Mr. Kubiatowski if he |
| 02:34:54 | 8 | had any objection, because I believe you said it would |
| 02:34:57 | 9 | certainly open the door to prior instances of misconduct.  And |
| 02:35:01 | 10 | I think at that point I grabbed the photographs back anyway, |
| 02:35:04 | 11 | because it wasn't a good idea to use them. |
| 02:35:07 | 12 | But we do have those, and I'm not showing those to |
| 02:35:10 | 13 | you or asking you to look at those necessarily, you know, to |
| 02:35:14 | 14 | kind of tug at your heart strings, but this does show who |
| 02:35:17 | 15 | Scott Lewis is.  It shows him as a family man, and these were |
| 02:35:21 | 16 | taken beforehand.  It shows him with his children.  It shows |
| 02:35:24 | 17 | him with his fiancee.  And it shows him in a setting other |
| 02:35:28 | 18 | than just being put on a big screen in this courtroom talking |
| 02:35:32 | 19 | about fake drugs with an informant behind him laughing.  It |
| 02:35:36 | 20 | shows the full person that Scott Lewis is. |
| 02:35:42 | 21 | You also obviously have to take into account the |
| 02:35:46 | 22 | sentencing guidelines.  But you have somewhat -- well, not |
| 02:35:49 | 23 | somewhat -- you have been, I guess, uncuffed from having to |
| 02:35:53 | 24 | base it on the sentencing guidelines.  And I think in this |
| 02:35:55 | 25 | case the guidelines truly overstate not only the crime, but |

02:36:01  1  when compared with the factors that you can now look at under

02:36:05  2  3553(a), I think a guideline sentence is just too excessive of

02:36:11  3  a sentence.

02:36:12  4        I would ask -- you know, it's -- I was thinking to

02:36:15  5  myself walking over here, even if I have a great day and win,

02:36:18  6  I'm getting fifteen years for my client.  I mean, fifteen

02:36:21  7  years is a long time.  I was thinking about, fifteen years ago

02:36:23  8  I was a junior in high school, and all the time that has gone

02:36:26  9  passed and all the things that Mr. Lewis is going to miss out

02:36:29  10  on, even if you sentence him to the minimum under the law.

02:36:33  11        And I would suggest that in this case with the facts

02:36:36  12  of this case and with the factors that you have to look at,

02:36:38  13  that a sentence of fifteen years would be sufficient but no

02:36:44  14  greater than necessary to achieve the goals that sentencing is

02:36:48  15  supposed to achieve.

02:36:50  16        Even the Seventh Circuit has stated a little bit of a

02:36:53  17  distaste for these types of cases.  They mentioned it in a

02:36:57  18  recent opinion, on a similar case with the exact same agent,

02:37:00  19  Locito, Gomez.  And there's a question as to whether or not

02:37:04  20  these are the types of investigations that should be taking

02:37:07  21  place.

02:37:08  22        That's not my job.  My job is to fight them.  My job

02:37:10  23  is to defend clients who are accused of them, and when they

02:37:14  24  get convicted or acquitted -- but convicted, to ask for mercy,

02:37:17  25  and I'm doing that in this case.  I'm asking you to sentence

02:37:20  1    Scott Lewis to fifteen years. I think it's sufficient, and

02:37:22  2    anything more, I would suggest, would be greater than

02:37:25  3    necessary, and that is our request.

02:37:29  4         THE COURT: Anything, Mr. Kubiatowski, that you want

02:37:33  5    to address?

02:37:35  6         MR. KUBIATOWSKI: The reference to the defendants in

02:37:36  7    this case as Three Stooges, your Honor, is, I think, a gross

02:37:40  8    exaggeration. The whole point of this type of investigation,

02:37:43  9    as conducted by the ATF, was to identify individuals who would

02:37:49  10   be willing to traffic in large quantities of cocaine, 20

02:37:52  11   kilograms in this instance, who are willing to distribute it,

02:37:55  12   and are willing to gain access to firearms in order to

02:37:58  13   accomplish the violent robbery of those 20 kilograms of

02:38:02  14   cocaine.

02:38:03  15        And in this instance, if you look not only at just

02:38:06  16   Mr. Lewis' criminal background, but at the criminal

02:38:09  17   backgrounds of the other two defendants that were arrested on

02:38:12  18   January 4th, I think it's very clear that the ATF was

02:38:15  19   successful in identifying three individuals that have a

02:38:19  20   history of criminal offenses, including violent criminal

02:38:23  21   offenses. That was the whole point of this investigation.

02:38:27  22        THE COURT: What's the violent criminal offense, the

02:38:29  23   shooting, the unlawful use of a weapon, is that --

02:38:33  24        MR. KUBIATOWSKI: Not with respect necessarily to

02:38:36  25   Mr. Lewis, your Honor.

02:38:37  1          THE COURT:  Okay.

02:38:37  2          MR. KUBIATOWSKI:  But the other defendants did have

02:38:41  3   violent offenses in their background, specifically

02:38:45  4   Mr. Billingsley.

02:38:46  5          Mr. Lewis has a criminal conviction for access to a

02:38:50  6   firearm, and certainly the conversations during the transcript

02:38:54  7   made it clear that they expected a firearm to be present.  But

02:38:58  8   all three of these individuals had significant criminal

02:39:02  9   histories, and that was the type of individual that was --

02:39:06  10  that the ATF was hoping to get in this type of sting

02:39:10  11  operation, and I believe they succeeded in doing so.

02:39:12  12         THE COURT:  The ATF had a sting against Mr. Lewis,

02:39:16  13  and they had no idea who Mr. Lewis would bring into that

02:39:20  14  operation as far as the owner of the firearm, right?  So the

02:39:24  15  ATF didn't target violent offenders like Billingsley and

02:39:28  16  Williams.  The ATF targeted him, right?

02:39:31  17         MR. KUBIATOWSKI:  That's completely accurate, your

02:39:35  18  Honor.  But the whole point of this type of operation, the

02:39:37  19  whole point of the stash house, the large amount of cocaine,

02:39:41  20  the need to rob it, is to see not only if Mr. Lewis would be

02:39:46  21  interested in doing that and participating in that type of

02:39:49  22  violent crime, but whether or not he can recruit other

02:39:51  23  individuals that are also willing to participate in that type

02:39:55  24  of crime.

02:39:55  25         And the type of individuals that are going to be

02:39:58    1    willing to participate in that type of crime is not your

02:40:03    2    average-day citizen.  It's going to be somebody with a

02:40:05    3    criminal background, and that's exactly what resulted, based

02:40:10    4    on the arrest.

02:40:11    5          THE COURT:  Okay.  Anything anyone wants to add,

02:40:15    6    before Mr. Lewis is given an opportunity to talk?

02:40:17    7          MR. CHERONIS:  I would just like to say that

02:40:19    8    Mr. Lewis did tell me -- and I didn't get them -- but he does

02:40:23    9    have forum certificates, since he's been incarcerated.  I

02:40:28   10    mean, this is an '07 case and he's been locked up for a while.

02:40:29   11    And he has been going to classes, bible study and other

02:40:33   12    classes, while at the MCC.  He certainly has been making the

02:40:37   13    best of what is certainly a difficult situation.

02:40:41   14          I will -- I think they're still right there in the

02:40:44   15    lockup.  I mean, if I could get those?

02:40:45   16          THE COURT:  You're free to do so, yes.

02:40:52   17          (Exit Mr. Cheronis.)

02:41:17   18          (Enter Mr. Cheronis.)

02:41:19   19          MR. CHERONIS:  There's a lot of them, your Honor.  I

02:41:21   20    will tender them to you.  I don't know if you want me to read

02:41:23   21    them into the record or --

02:41:24   22          THE COURT:  You can tender them to me.

02:41:26   23          MR. CHERONIS:  All right.

02:41:26   24          THE COURT:  Or you can read them into the record as

02:41:29   25    well so we have it.

| | |
|---|---|
| 02:41:29 | 1 |
| 02:41:33 | 2 |
| 02:41:39 | 3 |
| 02:41:42 | 4 |
| 02:41:45 | 5 |
| 02:41:49 | 6 |
| 02:41:53 | 7 |
| 02:41:59 | 8 |
| 02:42:03 | 9 |
| 02:42:09 | 10 |
| 02:42:14 | 11 |
| 02:42:17 | 12 |
| 02:42:21 | 13 |
| 02:42:24 | 14 |
| 02:42:28 | 15 |
| 02:42:30 | 16 |
| 02:42:34 | 17 |
| 02:42:39 | 18 |
| 02:42:39 | 19 |
| 02:42:42 | 20 |
| 02:42:45 | 21 |
| 02:42:48 | 22 |
| 02:42:50 | 23 |
| 02:42:53 | 24 |
| 02:43:02 | 25 |

MR. CHERONIS:  He has a certificate of completion
regarding dependency and treatment at a discipleship program;
certificate of completion for a paternal involvement center;
certificate of completion for adult continuing education
entrepreneurship; a certificate of completion for volunteer
services for counseling program outstanding contributions as
facilitator, clerk, and coordinator; certificate of excellence
for participation in the victim impact homicide counseling
center; certificate of completion for the mister counseling
phase 8; the American Bible Academy -- there are several
certificates of completion from the American Bible Academy;
certificate of completion for more bible academy; truths of
the bible, certificate of achievement; bible handbook,
certificate of achievement.  I'm assuming he got really good
at it by the fifth one.

Certificate of achievement, Jesus the Christ; God's
great exchange, certificate of achievement; free to live,
certificate of achievement; you must be born again,
certificate of achievement; the words Jesus taught,
certificate of achievement; the reluctant prophet, certificate
of achievement; God's plan for the world, certificate of
achievement; what Christians believe, certificate of
achievement; more certificate -- two more certificates of
achievement regarding the Christian faith.

And there's more in here, but I think your Honor gets

02:43:05  1   the gist.

02:43:06  2        THE COURT:  Of what he's been doing since he's been

02:43:08  3   incarcerated.

02:43:09  4        MR. CHERONIS:  Absolutely.

02:43:10  5        THE COURT:  All right.

02:43:10  6        MR. CHERONIS:  And I will, I guess, make these part

02:43:15  7   of the record.

02:43:15  8        THE COURT:  That's fine.

02:43:16  9        MR. CHERONIS:  If that's necessary.  I mean ...

02:43:19  10        THE COURT:  If he wants to keep them, they can -- we

02:43:23  11   can just refer to them, as you just did, as part of the

02:43:25  12   record.

02:43:26  13        MR. CHERONIS:  Okay.  That's fine.  Thank you.

02:43:27  14        THE COURT:  All right.  All right.  Anything else

02:43:30  15   anyone wants to add before Mr. Lewis speaks?

02:43:32  16        (No response.)

02:43:33  17        THE COURT:  All right.  Mr. Lewis, do you have

02:43:33  18   anything you want to say to the Court, before I sentence you,

02:43:36  19   sir?

02:43:37  20        THE DEFENDANT:  I --

02:43:38  21        THE COURT:  If so, maybe you could come over to the

02:43:40  22   microphone, so I can hear you better.

02:43:40  23                        - - -

02:43:41  24                    ALLOCUTION

02:43:41  25        THE DEFENDANT:  I just wanted to relate to the Court

| | | |
|---|---|---|
| 02:43:44 | 1 | that I understand the serious nature of the charges.  And I |
| 02:43:47 | 2 | realize what potentially could have happened, if this was a |
| 02:43:51 | 3 | real scenario.  And I just wanted to let you know that what |
| 02:43:54 | 4 | you saw in the videotapes, that was not me.  And I know that I |
| 02:43:58 | 5 | made some bad decisions, and I got to pay for the |
| 02:44:02 | 6 | consequences.  But I just want to let you know that I've been |
| 02:44:06 | 7 | spending the time here trying to rehabilitate myself. |
| 02:44:09 | 8 | And I know that my life is not over because of this. |
| 02:44:14 | 9 | Even when this is over, I can go and be a productive member of |
| 02:44:17 | 10 | society.  And that's all I have to say. |
| 02:44:18 | 11 | THE COURT:  All right.  Thank you, sir. |
| 02:44:18 | 12 | - - - |
| 02:44:26 | 13 | SENTENCE |
| 02:44:26 | 14 | THE COURT:  Okay.  We start, as we have done, with a |
| 02:44:29 | 15 | guideline range of 262 to 327 months, that's a 22-year floor |
| 02:44:37 | 16 | in the guideline range there.  Of course, that is adjustable, |
| 02:44:43 | 17 | according to the 3553 factors.  The 60-month sentence is not. |
| 02:44:47 | 18 | That's subsequent to whatever sentence I impose upon Count 1 |
| 02:44:53 | 19 | of the indictment. |
| 02:44:54 | 20 | So we start with the nature and circumstances of the |
| 02:44:57 | 21 | offense and the history and characteristics of the defendant, |
| 02:45:01 | 22 | and I think in this case those overlap significantly. |
| 02:45:06 | 23 | It was a very unique trial that the Court sat and |
| 02:45:10 | 24 | listened to the testimony regarding over the course of the |
| 02:45:14 | 25 | days that the witnesses were here.  And I have to agree with |

02:45:21  1   the Seventh Circuit's statement that if judges sat in a

02:45:26  2   policymaking role, perhaps we might have reason to wonder

02:45:31  3   whether this scheme was the right use of law enforcement

02:45:33  4   resources.

02:45:34  5           That is not my job either, Mr. Cheronis, and it is

02:45:38  6   not my job to question who they choose to target, but it is my

02:45:42  7   job to take into account the 3553 factors.  And I can say this

02:45:48  8   about that.  The history of criminal activity by Mr. Lewis

02:45:55  9   does not lead up to or comport with an individual who would go

02:46:04  10  from a fifteen -- or $155 bad check, giving a false name to a

02:46:12  11  police officer, stealing some presents from a Christmas tree,

02:46:26  12  and then, finally, the more serious of all, the domestic

02:46:30  13  battery charge, to suddenly dealing in 20 kilograms of cocaine

02:46:36  14  with a loaded weapon and tied-up individuals.

02:46:39  15          I don't agree that the ATF was identifying an

02:46:44  16  individual who was willing to traffic in cocaine.  I don't see

02:46:48  17  the trafficking in cocaine in the history here.  I don't see

02:46:52  18  the violence that was discussed in the tape.

02:46:57  19          Now, you spoke those words on the tape, so there's no

02:47:00  20  question -- I saw the video -- you were ready and willing to

02:47:06  21  do this particular act, and I can't take that away.  That's

02:47:10  22  what -- that's the reason you're here today.  But to say that

02:47:14  23  that comports with a 32-year sentence, as the Government was

02:47:18  24  suggesting is appropriate, based upon this person before me

02:47:23  25  just doesn't make sense to the Court.

| | | |
|---|---|---|
| 02:47:27 | 1 | I think instead that there was -- there's troubling |
| 02:47:32 | 2 | factors to the Government's case.  The fact that the |
| 02:47:38 | 3 | entrapment defense that was presented was a defense based upon |
| 02:47:41 | 4 | the fact that the cooperating individual enabled him to use |
| 02:47:46 | 5 | cocaine and that there was credible testimony from his family |
| 02:47:50 | 6 | that his personality changed during this period of time, when |
| 02:47:54 | 7 | he was not a cocaine user beforehand until this period of |
| 02:47:57 | 8 | time, that may be, according to the Government, found to be |
| 02:48:00 | 9 | incredible by the jury, but I'm not so sure, as I've ruled, |
| 02:48:04 | 10 | that that is the case. |
| 02:48:05 | 11 | It could be simply that they didn't find that his |
| 02:48:09 | 12 | will was overborne and that he was extraordinarily induced. |
| 02:48:13 | 13 | The truth is is that you have a cooperating individual, who |
| 02:48:16 | 14 | you've turned over information for, where there is possibility |
| 02:48:19 | 15 | that he may have been using cocaine.  I don't know.  We |
| 02:48:23 | 16 | haven't gotten to the bottom of that. |
| 02:48:24 | 17 | So we're relying on an undercover operation that |
| 02:48:28 | 18 | takes a nondrug-dealing defendant with no violent criminal |
| 02:48:34 | 19 | history and has him potentially using drugs with an undercover |
| 02:48:38 | 20 | informant, and now he's facing 32 years in prison. |
| 02:48:44 | 21 | I think that the nature and circumstances of the |
| 02:48:46 | 22 | offense show that that twenty-year -- or that 32-year sentence |
| 02:48:52 | 23 | is significantly created by the Government's undercover |
| 02:48:58 | 24 | operation.  It wasn't chosen to take a kilo of cocaine.  It |
| 02:49:02 | 25 | wasn't chosen to try a various other step or a smaller crime. |

| 02:49:08 | 1 | It was we went to the hilt with this very large crime. |

02:49:08  1  It was we went to the hilt with this very large crime.

02:49:11  2  I'm not finding sentencing entrapment. I'm taking it

02:49:14  3  as a factor of the crime.

02:49:17  4  So if I was looking at a man who had committed drug

02:49:22  5  dealing in his history and if I was looking at a man who had

02:49:26  6  tied up people in the past -- and I have those offenders in my

02:49:31  7  courtroom -- then the circumstances of the offense would be

02:49:34  8  very much in keeping with what the Government laid out for him

02:49:37  9  to participate in. But that's not the criminal history that I

02:49:41  10  see here of this individual.

02:49:43  11  And so the circumstances of the offense are such that

02:49:46  12  there is no cocaine and there was no violence and it was

02:49:50  13  created to be the extreme scenario that the Government created

02:49:55  14  for an individual who had not engaged in that extensive and

02:50:01  15  significantly violent behavior or significant drug dealing in

02:50:05  16  the past, and that will be taken into account in this

02:50:07  17  sentence.

02:50:07  18  As far as the history and characteristics of the

02:50:11  19  defendant, I think I've set forth there's plenty of history

02:50:14  20  here that shows that you haven't learned your lesson, and

02:50:17  21  whether bluffing or willing to do so at the time that you

02:50:20  22  committed this crime, you're going to be held responsible for

02:50:22  23  your agreement. The jury found you responsible. They didn't

02:50:26  24  find you entrapped.

02:50:27  25  So I don't see, though, that there's a recidivism

| | |
|---|---|
| 02:50:32 | 1 |
| 02:50:36 | 2 |
| 02:50:39 | 3 |
| 02:50:43 | 4 |
| 02:50:47 | 5 |
| 02:50:50 | 6 |
| 02:50:56 | 7 |
| 02:51:00 | 8 |
| 02:51:06 | 9 |
| 02:51:07 | 10 |
| 02:51:12 | 11 |
| 02:51:15 | 12 |
| 02:51:18 | 13 |
| 02:51:23 | 14 |
| 02:51:24 | 15 |
| 02:51:27 | 16 |
| 02:51:31 | 17 |
| 02:51:35 | 18 |
| 02:51:35 | 19 |
| 02:51:40 | 20 |
| 02:51:45 | 21 |
| 02:51:48 | 22 |
| 02:51:51 | 23 |
| 02:51:55 | 24 |
| 02:51:59 | 25 |

that Mr. Lewis is going to create some stash house robbery, tying up people, and stealing 20 kilos of cocaine. It isn't in his history. It isn't indicative of his behavior. And I find that he would not recommit such a crime, because the only reason it was there in the first place was because it was created at that level by the undercover operation, which I will note was also troubling, to some extent, as far as the ATF's recording of activities that were very much in question for this jury.

The jury took that into account, though, and they -- Mr. Cheronis, you very actively questioned the agent about his lack of reporting on his reports. And, therefore, I'm assuming that the jury recognized that, and they took that into account when they convicted.

Now, I don't believe that we need to protect the public from a crime of Mr. Lewis doing a 20-kilo drug deal. And so that will be one of the factors that we take into account.

Now, as far as the sentence that is appropriate, you did agree to participate in this on this date, and, therefore, you're going to suffer the consequences. There's 60 months that's automatically suffered, because of who you brought in. You brought in two individuals, one who had a weapon knowingly in order to fulfill the role. And so a significant sentence needs to be imposed in order to tell others that you can't

02:52:03  1  agree to do something like that.  You didn't know that it

02:52:07  2  wasn't going to take place.  You believed it was going to take

02:52:10  3  place.

02:52:10  4        I'm, therefore, going to deviate from the guideline

02:52:16  5  range, and I'm going to do so based upon the fact that the

02:52:20  6  circumstances of the crime are such that I don't think they

02:52:23  7  would be replicated by the defendant and because I don't

02:52:27  8  believe the history and characteristics of the defendant show

02:52:29  9  that he was the type that would escalate to this level of

02:52:33  10  behavior, and I'm going to impose 162 months on Count 1

02:52:39  11  followed by the 60 months' incarceration on Count 2.  That's

02:52:45  12  100 months down, which brings you to about a thirteen-year

02:52:49  13  sentence on Count 1, followed by the mandatory five years

02:52:53  14  after that.

02:52:53  15        Now, aside from all of those factors, I'm going to

02:52:59  16  impose the supervised period of release to be five years on

02:53:03  17  Count 1 and 3 to run concurrently.

02:53:07  18        You have a special assessment of $200.

02:53:09  19        I'm not ordering a fine or restitution.

02:53:11  20        And you also will be required to participate in both

02:53:17  21  a -- or rather just a drug rehabilitation program during

02:53:22  22  prison, as well as during your period of supervised release.

02:53:26  23        You need to participate in the collection of a DNA

02:53:29  24  sample.

02:53:29  25        You may not possess a firearm or a destructive

02:53:32  1  device.

02:53:33  2  　　　　You'll participate in that drug program, which may

02:53:36  3  include urine testing of up to 104 tests per year.

02:53:39  4  　　　　And you may not commit another federal, state, or

02:53:42  5  local crime, once you're on your supervised release.

02:53:44  6  　　　　You have a right to appeal this sentence.

02:53:48  7  Mr. Cheronis can give you the details regarding that.  It's

02:53:52  8  within ten days of the imposition of the judgment and

02:53:55  9  commitment order, which comes out usually within a day or so

02:53:58  10  of the sentence.

02:54:00  11  　　　　Is there anything else that I need to address from

02:54:02  12  either side?

02:54:03  13  　　　　MR. CHERONIS:  Not on behalf of Mr. Lewis.

02:54:05  14  　　　　MR. KUBIATOWSKI:  Not on behalf of the Government,

02:54:07  15  your Honor.

02:54:07  16  　　　　THE COURT:  All right.  Thank you.

17  　　　　(Concluded at 2:54 p.m.)

18  　　　　　　　　- - -

19

20

21

22

23

24

25

1

2

3                  C E R T I F I C A T E

4

5    I certify that the foregoing is a correct transcript from

6   the record of proceedings in the above-entitled matter.

7

8   /s/April M. Metzler, RPR, CRR, FCRR   November 16, 2009

9   April M. Metzler, RPR, CRR, FCRR       Date

10  Official Federal Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25