1

02:57:48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


UNITED STATES OF AMERICA,          Case No. 1:07-cr-00007-2

   Plaintiff,                      Chicago, Illinois
                                   November 16, 2009
          v.                       Sentencing


VERNON WILLIAMS,

   Defendant.
-------------------------------


TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE VIRGINIA M. KENDALL
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Government:    Office of the U.S. Attorney
                       By:  Stephen A. Kubiatowski
                       219 S. Dearborn St., 5th Fl.
                       Chicago, IL 60604
                       (312) 353-5300

1

2

3  **<u>APPEARANCES (Cont'd)</u>:**

4

5

6  For the Defendant:      Francis C. Lipuma
                           300 S. Wacker Dr., Ste. 1700A
                           Chicago, IL 60606
7                          (312) 675-0089

8

9  **<u>Also Present</u>:**        Malissa Groth,
                           U.S. Probation Department
10

11

12  **<u>COURT REPORTER</u>:**        FEDERAL OFFICIAL COURT REPORTER
                           April M. Metzler, RPR, CRR
13                         219 South Dearborn St., Rm. 2318-A
                           Chicago, IL 60604
14                         (312) 408-5154
                           April_Metzler@ilnd.uscourts.gov
15

16

17

18

19

20

21

22

23

24

25  **Proceedings recorded by mechanical stenography; transcript
produced by notereading.**

1

## I N D E X

2

DESCRIPTION                                                    PAGE

3

4

ALLOCUTION                                                      30

5

SENTENCING                                                      31

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 03:10:42 | 1 | (Commenced at 3:10 p.m.) |
| 03:10:42 | 2 | THE CLERK:  07CR7, defendant number 2, USA versus |
| 03:10:49 | 3 | Vernon Williams. |
| 03:10:49 | 4 | MR. KUBIATOWSKI:  Good afternoon, your Honor.  Steve |
| 03:10:51 | 5 | Kubiatowski representing the United States. |
| 03:10:51 | 6 | THE COURT:  Good afternoon. |
| 03:10:52 | 7 | MR. LIPUMA:  Good afternoon, your Honor.  Frank |
| 03:10:55 | 8 | Lipuma on behalf of Vernon Williams, who is present before the |
| 03:10:57 | 9 | Court. |
| 03:10:57 | 10 | THE COURT:  Good afternoon, Mr. Lipuma. |
| 03:10:58 | 11 | Good afternoon, Mr. Williams. |
| 03:11:00 | 12 | THE DEFENDANT:  Good afternoon. |
| 03:11:01 | 13 | THE COURT:  You may sit, feel free to sit while we're |
| 03:11:03 | 14 | doing this. |
| 03:11:03 | 15 | All right.  Did everyone receive a copy of the |
| 03:11:05 | 16 | Presentence Investigation Report? |
| 03:11:06 | 17 | MR. LIPUMA:  Yes, your Honor. |
| 03:11:08 | 18 | MR. KUBIATOWSKI:  Yes, your Honor. |
| 03:11:09 | 19 | THE COURT:  Mr. Kubiatowski, do you have any factual |
| 03:11:11 | 20 | changes? |
| 03:11:13 | 21 | MR. KUBIATOWSKI:  No, your Honor. |
| 03:11:13 | 22 | THE COURT:  All right.  I know you do, Mr. Lewis.  So |
| 03:11:14 | 23 | let's go through those and see if we can get them corrected. |
| 03:11:17 | 24 | You stated that on page 4, line 3, that he was taken |
| 03:11:26 | 25 | into custody on January 4th.  Do you have any reason to |

| | | |
|---|---|---|
| 03:11:29 | 1 | challenge that, Mr. Kubiatowski? |
| 03:11:31 | 2 | MR. KUBIATOWSKI: No, your Honor. |
| 03:11:32 | 3 | THE COURT: Okay. So we'll make a change to that, |
| 03:11:35 | 4 | that'll be January 4th. |
| 03:11:37 | 5 | Then on page 5, at line 49, Mr. Williams wasn't |
| 03:11:49 | 6 | present at that meeting. |
| 03:11:50 | 7 | MR. KUBIATOWSKI: That's correct, your Honor. |
| 03:11:52 | 8 | THE COURT: Okay. So -- |
| 03:11:54 | 9 | MS. GROTH: That should be a reference to Scott |
| 03:11:56 | 10 | Lewis, your Honor. That was an error. |
| 03:11:58 | 11 | THE COURT: Okay. So let's -- |
| 03:11:58 | 12 | MS. GROTH: The defendant it should be -- |
| 03:12:00 | 13 | THE COURT: Okay. Let's say defendant Scott Lewis |
| 03:12:02 | 14 | agreed. Is that okay? |
| 03:12:05 | 15 | MS. GROTH: Yes. |
| 03:12:05 | 16 | THE COURT: All right. And then page 8, line 134, so |
| 03:12:21 | 17 | you're saying the word carry or possession should replace the |
| 03:12:24 | 18 | word use. |
| 03:12:26 | 19 | MR. LIPUMA: Yes, Judge. That was what was charged |
| 03:12:28 | 20 | in the indictment. It's a small matter, but the gun wasn't |
| 03:12:31 | 21 | used, nor was it charged as having been used, but it was |
| 03:12:34 | 22 | charged as having been possessed or carried. |
| 03:12:36 | 23 | THE COURT: Was the language of the indictment such |
| 03:12:40 | 24 | that it said possession or carrying of a firearm? |
| 03:12:41 | 25 | MR. KUBIATOWSKI: That's correct, your Honor, and the |

03:12:43  1  instructions also reflected that.

03:12:44  2          THE COURT:  Okay.  Let's just change that to be

03:12:47  3  careful.  So use will be changed to possession or carrying of

03:12:50  4  a firearm.

03:12:51  5          And then if you could just make those changes, I

03:12:54  6  don't need a new copy to review, but just make those

03:12:56  7  clarifications.  Okay.

03:12:58  8          MS. GROTH:  Will do, your Honor.

03:12:59  9          THE COURT:  Okay.  Thank you.

03:12:59  10          All right.  Now, the sentencing guideline

03:13:02  11  calculations, we have a base offense level of 34, based upon

03:13:10  12  15 to 20 kilograms of cocaine.  And I know that you,

03:13:19  13  Mr. Lipuma, recognize that the challenge to that is difficult,

03:13:23  14  because the case law is such that if they agreed to enter into

03:13:32  15  a robbery that would be for that amount, that you recognize

03:13:34  16  the case law says that that would be the amount.  But do you

03:13:37  17  have something that you want to add to that?

03:13:39  18          MR. LIPUMA:  Judge, just very briefly, in addition to

03:13:43  19  what Mr. Cheronis said with respect to Mr. Scott Lewis'

03:13:45  20  sentencing, this base offense level of 34, again, this is --

03:13:53  21  Mr. Kubiatowski pointed out that Scott Lewis admitted in his

03:13:56  22  post-arrest statement after being arrested in this case that

03:13:58  23  he expected 15 or 20 or more kilograms.  So that was one of

03:14:02  24  the bases and, I think, the primary basis the Court relied on.

03:14:04  25          But the Court also indicated Mr. Kubiatowski pointed

| | |
|---|---|
| 03:14:08 | 1 |
| 03:14:10 | 2 |
| 03:14:12 | 3 |
| 03:14:17 | 4 |
| 03:14:19 | 5 |
| 03:14:22 | 6 |
| 03:14:26 | 7 |
| 03:14:29 | 8 |
| 03:14:34 | 9 |
| 03:14:37 | 10 |
| 03:14:39 | 11 |
| 03:14:40 | 12 |
| 03:14:43 | 13 |
| 03:14:46 | 14 |
| 03:14:48 | 15 |
| 03:14:54 | 16 |
| 03:14:57 | 17 |
| 03:14:59 | 18 |
| 03:15:02 | 19 |
| 03:15:05 | 20 |
| 03:15:09 | 21 |
| 03:15:12 | 22 |
| 03:15:17 | 23 |
| 03:15:20 | 24 |
| 03:15:23 | 25 |

1  out that there was some discussion about 20 kilos in various
2  transcripts, and certainly that's the case.  I guess my
3  problem with this is a little bit further than what
4  Mr. Cheronis said.  And that's when the agents, when they're
5  sitting determining what amount they're going to say is
6  involved in this fictitious scenario can pick out any number.
7       So why doesn't Agent Gomez say five kilograms?
8  Wouldn't that have piqued Mr. Williams' interest and
9  Mr. Lewis' interest?  Why did it have to be 20 or 25
10  kilograms?  Why did this have to be more?  Why couldn't it be
11  150 kilograms?
12       So my problem with this -- and I know the case law is
13  against us, Judge, as Mr. Kubiatowski pointed out, and the
14  guidelines, and we acknowledged in our sentencing memorandum
15  that case law is against us.  However, it just allows the ATF
16  agents to drive the sentencing range in this case with no
17  regard for what the Court's consideration may be in terms of
18  the initial calculations under the guidelines.  And I stated
19  enough of that, I've laid it out in our sentencing memorandum.
20       And I just would point out -- and one further thing.
21  In addition to the vagueness with respect to what was stated
22  on the tapes, it was odd that the jury a week later in Lavoyce
23  Billingsley's sentencing [sic] could come back and say, No,
24  there was not -- we can't agree that there's five or more
25  kilograms.  We find it's just a measurable amount, or maybe it

03:15:26 1 was 500 grams. I'm not exactly sure. But it was certainly

03:15:29 2 different than what the jury found in this case. And I would

03:15:31 3 submit that if they do ten juries, those juries could be

03:15:34 4 inconsistent as well.

03:15:35 5 So I understand the Court's going to rule against us

03:15:37 6 and be consistent with how it found for Scott Lewis, but I

03:15:41 7 would just like to make that point for the record.

03:15:43 8 THE COURT: Well, we did just have Mr. Lewis'

03:15:46 9 sentencing, Mr. Williams, and one of the things that we

03:15:51 10 reviewed were the transcripts that Mr. Kubiatowski brought

03:15:54 11 from the December 15th meeting, during which at lines 82 to 83

03:16:01 12 the informant talked about usually seeing 20 kilograms;

03:16:05 13 And at lines 92 to 93, I mean, I'm talking 20 kilos;

03:16:09 14 And then at line 299 that, I hit this place for 20

03:16:13 15 kilos;

03:16:13 16 And then again three days later that at line 169, I

03:16:18 17 usually see 20 kilos. I usually see them cutting 20 kilos.

03:16:22 18 So the question for the Court is what was that

03:16:27 19 agreement as far as the robbery into that stash house. And

03:16:31 20 that robbery, according to the person who made the agreement

03:16:35 21 in the first place, was at least 15 kilos. It was a

03:16:40 22 15-to-20-kilo robbery. And, therefore, the evidence that was

03:16:44 23 presented to the jury was that it was for an approximate

03:16:48 24 20-kilo robbery, and I think that's corroborated by the

03:16:53 25 post-arrest statement of your codefendant. And, therefore,

| | | |
|---|---|---|
| 03:16:56 | 1 | the Court finds that it is the 15-to-20 kilo amount, which is |
| 03:17:01 | 2 | a level 34. |
| 03:17:03 | 3 | So then we move on to an adjustment for role in the |
| 03:17:08 | 4 | offense.  There is no adjustment, based upon the fact that you |
| 03:17:10 | 5 | were recruited by Mr. Lewis. |
| 03:17:12 | 6 | And then we go to the firearm -- the use of the |
| 03:17:15 | 7 | firearm in the drug trafficking offense, which is the |
| 03:17:18 | 8 | conviction carries a 60-month mandatory sentence to run |
| 03:17:22 | 9 | consecutive to the first count. |
| 03:17:24 | 10 | And then the final one that's mentioned in the |
| 03:17:33 | 11 | probation officer's report is whether a career offender |
| 03:17:37 | 12 | analysis applies. |
| 03:17:37 | 13 | Does anyone want to address that or is everyone in |
| 03:17:40 | 14 | agreement that the career offender is not applicable here to |
| 03:17:44 | 15 | the defendant? |
| 03:17:45 | 16 | MR. KUBIATOWSKI:  Your Honor, I think one of |
| 03:17:48 | 17 | Mr. Lipuma's objections was minor role.  I think both parties |
| 03:17:52 | 18 | agree there's no role enhancement, but he is arguing for a -- |
| 03:17:55 | 19 | THE COURT:  Okay. |
| 03:17:55 | 20 | MR. KUBIATOWSKI:  -- minor role. |
| 03:17:57 | 21 | THE COURT:  Okay.  All right.  Go ahead. |
| 03:17:58 | 22 | MR. LIPUMA:  Yes, Judge.  I sincerely believe that a |
| 03:18:01 | 23 | minor role adjustment of two levels is appropriate here under |
| 03:18:04 | 24 | the totality of the circumstances.  And the standard is is |
| 03:18:08 | 25 | Mr. Williams less culpable than most other participants. |

03:18:11 1    Well, the probation officer and the Government have

03:18:13 2 suggested and the Court has found that Scott Lewis had an

03:18:16 3 aggravating role in the offense, so we're even right there.

03:18:19 4    And I guess it's our burden to prove then whether

03:18:23 5 Vernon Williams is less culpable than Lavoyce Billingsley.

03:18:27 6 And we would suggest that he clearly is less culpable than

03:18:31 7 Lavoyce Billingsley, because the primary reasoning is Lavoyce

03:18:34 8 Billingsley is the person who brought the gun on January 4th.

03:18:38 9 He's also the one who brought the ammo, which was in his car.

03:18:41 10 So the vehicle that was going to be used, the gun that was

03:18:45 11 going to be used, the ammunition that supposedly was going to

03:18:49 12 be used was all brought by Lavoyce Billingsley at the

03:18:52 13 suggestion of Scott Lewis.

03:18:55 14    What is common between Vernon Williams and Lavoyce

03:19:01 15 Billingsley is only that, according to the jury's verdict,

03:19:04 16 Judge, they had the same agreement.  We don't necessarily

03:19:07 17 agree with the jury's verdict, but they did agree, so they

03:19:11 18 both presumably expressed words of agreement.  But that is

03:19:15 19 where the similarity ends, Judge.

03:19:17 20    Vernon Williams basically says, let's break it down

03:19:20 21 to, I agree to be in this crime.  Lavoyce Billingsley says, I

03:19:23 22 agree to be in this crime.  Both are convicted on Count 1.

03:19:27 23 And what's the critical distinction between those two fellows?

03:19:32 24 Lavoyce Billingsley's got the gun.  Scott Lewis is running the

03:19:35 25 show, making the plans on how to commit this robbery.

| | | |
|---|---|---|
| 03:19:40 | 1 | And I think the Court also will recall that on those |
| 03:19:43 | 2 | tapes when Mr. Williams is present, on December 18th, Rojo, |
| 03:19:48 | 3 | the CI, and the agent are basically saying, Bring your big |
| 03:19:52 | 4 | artillery, bring your little artillery, bring any artillery. |
| 03:19:57 | 5 | And what does Vernon Williams bring? No -- no artillery. No |
| 03:20:02 | 6 | guns, no weapons whatsoever. So, to me, it's a pretty |
| 03:20:05 | 7 | fundamental and obvious distinction in the roles in the |
| 03:20:06 | 8 | offense here. |
| 03:20:06 | 9 | Scott Lewis has obviously got an aggravating role. |
| 03:20:09 | 10 | He's leading this. The Court has so found. We can't |
| 03:20:12 | 11 | necessarily disagree with that. |
| 03:20:13 | 12 | And then we look at the other two participants, |
| 03:20:16 | 13 | Lavoyce Billingsley and Vernon Williams. They're similar in |
| 03:20:20 | 14 | that they both agreed to commit the crime, according to the |
| 03:20:23 | 15 | jury's verdict. But there is a distinct difference in that |
| 03:20:25 | 16 | Lavoyce Billingsley is the one who brings the gun. So, |
| 03:20:29 | 17 | therefore, we think two levels would apply, your Honor. |
| 03:20:31 | 18 | THE COURT: And you're seeking a minor participant |
| 03:20:33 | 19 | under section B -- subsection B, not a minimal participant, |
| 03:20:37 | 20 | correct? |
| 03:20:37 | 21 | MR. LIPUMA: Correct, your Honor. |
| 03:20:38 | 22 | THE COURT: Okay. Mr. Kubiatowski? |
| 03:20:39 | 23 | MR. KUBIATOWSKI: Your Honor, the touchstone is not |
| 03:20:41 | 24 | how he compares to Mr. Billingsley. The touchstone, under the |
| 03:20:44 | 25 | Seventh Circuit, is whether or not he played a central role, |

| | |
|---|---|
| 03:20:49 | 1 |
| 03:20:52 | 2 |
| 03:20:57 | 3 |
| 03:20:57 | 4 |
| 03:21:01 | 5 |
| 03:21:04 | 6 |
| 03:21:09 | 7 |
| 03:21:14 | 8 |
| 03:21:17 | 9 |
| 03:21:22 | 10 |
| 03:21:26 | 11 |
| 03:21:28 | 12 |
| 03:21:31 | 13 |
| 03:21:35 | 14 |
| 03:21:38 | 15 |
| 03:21:41 | 16 |
| 03:21:44 | 17 |
| 03:21:51 | 18 |
| 03:21:56 | 19 |
| 03:21:59 | 20 |
| 03:22:05 | 21 |
| 03:22:08 | 22 |
| 03:22:15 | 23 |
| 03:22:18 | 24 |
| 03:22:19 | 25 |

an integral role in the conspiracy.  And, here, even though he didn't bring a firearm, he still played an integral role in the conspiracy.

We know, based on his words at the December 18th meeting, that he intended to be the first one to rush the stash house, that he intended to ransack the place along with the other coconspirators, that he was onboard with stripping those occupants naked and tieing them up.

He was certainly not less culpable than the other defendants.  We're not saying that he was a manager or supervisor; that was Scott Lewis.  But certainly his role cannot be described as minimal here.

His role was on par with that of Mr. Billingsley, and he certainly played an integral role in the planning of this conspiracy and in the plans to execute it.

THE COURT:  I think the problem that I have with the role reduction here is that unlike other cases that I look at from the Seventh Circuit regarding where one is less culpable than most other participants but whose role could not be described as minimal, generally we're looking at a role that is different from the other participants.  And, yes, you can distinguish it that one created the actual robbery team, which is Lewis, and that the other brought the weapon, and so he's distinctive.

But his role once the robbery was to take place was

| | | |
|---|---|---|
| 03:22:22 | 1 | to be a part of the team.  So I don't find that he has a less |
| 03:22:27 | 2 | significant role and, therefore, I'm not going to give him the |
| 03:22:30 | 3 | minor participant.  So he remains at a level 34. |
| 03:22:35 | 4 | And his criminal history is set forth starting on |
| 03:22:40 | 5 | page 11 where we start to begin with the points.  He's at a |
| 03:22:46 | 6 | level 5, correct? |
| 03:22:49 | 7 | MR. LIPUMA:  Yes, your Honor. |
| 03:22:50 | 8 | MR. KUBIATOWSKI:  That's correct, your Honor. |
| 03:22:51 | 9 | THE COURT:  And that's based on three points for the |
| 03:22:53 | 10 | burglary conviction when he was 29, and then the three points |
| 03:22:58 | 11 | for another burglary conviction when he was 33, and the three |
| 03:23:08 | 12 | points for the forgery conviction.  Oh, and then he was on |
| 03:23:25 | 13 | parole, is that correct, at the time?  So he gets the |
| 03:23:27 | 14 | increase -- |
| 03:23:28 | 15 | MR. LIPUMA:  Yes, your Honor. |
| 03:23:29 | 16 | THE COURT:  -- of the two points for that. |
| 03:23:31 | 17 | But why am I coming up with 11 and not 12?  Because |
| 03:23:38 | 18 | the -- |
| 03:23:38 | 19 | MR. LIPUMA:  I think there's that extra point, Judge, |
| 03:23:40 | 20 | for within so many years. |
| 03:23:41 | 21 | THE COURT:  Oh, it was committed within two years of |
| 03:23:44 | 22 | the offense. |
| 03:23:44 | 23 | Okay.  So do you have a position regarding his |
| 03:23:46 | 24 | criminal history, Mr. Lipuma? |
| 03:23:48 | 25 | MR. LIPUMA:  Judge, we have no objections to the |

| | |
|---|---|
| 03:23:50 | 1 |
| 03:23:51 | 2 |
| 03:23:56 | 3 |
| 03:23:57 | 4 |
| 03:24:00 | 5 |
| 03:24:02 | 6 |
| 03:24:04 | 7 |
| 03:24:06 | 8 |
| 03:24:10 | 9 |
| 03:24:21 | 10 |
| 03:24:25 | 11 |
| 03:24:30 | 12 |
| 03:24:33 | 13 |
| 03:24:39 | 14 |
| 03:24:44 | 15 |
| 03:24:49 | 16 |
| 03:24:52 | 17 |
| 03:24:55 | 18 |
| 03:24:59 | 19 |
| 03:25:04 | 20 |
| 03:25:06 | 21 |
| 03:25:12 | 22 |
| 03:25:16 | 23 |
| 03:25:20 | 24 |
| 03:25:21 | 25 |

officer's calculations.

THE COURT: Okay. So he is at a category V and a level 34.

Is there anything else regarding the guidelines that anyone wants to address?

MR. LIPUMA: I don't think we have any other issues with respect to the guidelines, Judge.

THE COURT: All right. So category IV -- excuse me -- V at a level 34 is 235 to 293 months.

Now, based upon the 3553 factors, let me hear first from the Government.

MR. KUBIATOWSKI: Your Honor, the seriousness of the offense here is that it involved a planned robbery of a drug stash house where the defendant and his coconspirators would forcibly subdue the occupants of that stash house, presumably at gunpoint -- at least that's what was discussed during the conversations -- that they would be tied up, and at that point they'd break away with 20 kilograms of cocaine -- cocaine worth over $400,000, on the assumption that each kilo is worth approximately $20,000.

The defendant, as far as personal history, has two recent burglary convictions and committed the instant offense while he was on parole, less than two years after he got out of prison.

He has an extensive criminal background that predates

03:25:27 1 that, a lot of which did not count, but nevertheless -- and

03:25:29 2 none of which involved violent offenses or narcotics offenses,

03:25:33 3 but nonetheless his category V fairly represents his criminal

03:25:42 4 history.

03:25:42 5 In his conversations, he talked about how he was

03:25:49 6 going to get the money off a brick and even though he

03:25:55 7 didn't -- has no previous narcotics convictions, he certainly

03:25:58 8 talked as if he knew the drug lingo.

03:26:06 9 As far as his personal characteristics, we've already

03:26:10 10 discussed his criminal history and the fact that, you know, at

03:26:16 11 an adult age, 29 and 33, he has criminal convictions for

03:26:19 12 burglary and committed the instant offense after being --

03:26:24 13 while being on parole and after being released.

03:26:28 14 In this instance, your Honor, I think a message needs

03:26:32 15 to be sent, given his history of recidivating, that he has to

03:26:39 16 clean up his act. And unfortunately in this case the

03:26:42 17 guidelines are significant, but we believe that they're

03:26:47 18 appropriately calculated and the guideline sentence,

03:26:50 19 accordingly, is what we will recommend.

03:26:51 20 THE COURT: Okay. And he's how old now, 42? Is that

03:26:58 21 right?

03:26:58 22 MR. LIPUMA: 41. It's 41, your Honor.

03:27:00 23 THE COURT: 41. Okay.

03:27:02 24 All right. And so you want a guideline sentence and

03:27:05 25 then followed by the 60 months, right?

| | |
|---|---|
| 03:27:07 | 1 |
| 03:27:11 | 2 |
| 03:27:11 | 3 |
| 03:27:12 | 4 |
| 03:27:15 | 5 |
| 03:27:18 | 6 |
| 03:27:22 | 7 |
| 03:27:27 | 8 |
| 03:27:28 | 9 |
| 03:27:31 | 10 |
| 03:27:31 | 11 |
| 03:27:35 | 12 |
| 03:27:37 | 13 |
| 03:27:40 | 14 |
| 03:27:44 | 15 |
| 03:27:48 | 16 |
| 03:27:51 | 17 |
| 03:27:52 | 18 |
| 03:27:57 | 19 |
| 03:28:00 | 20 |
| 03:28:06 | 21 |
| 03:28:08 | 22 |
| 03:28:11 | 23 |
| 03:28:14 | 24 |
| 03:28:18 | 25 |

MR. KUBIATOWSKI:  That's correct, your Honor.

THE COURT:  Okay.  All right.  Mr. Lipuma?

MR. LIPUMA:  Thank you, Judge Kendall.

Judge, on Count 1 there's a statutory mandatory minimum of ten years, and on Count 3 there's a statutory mandatory minimum of 60 consecutive months.  Count 2 we won, the attempt charge.  The jury basically said, On January 4th when these guys showed up and they got arrested, they were not ready.  They did not take a substantial step to commit this crime.

Our position, Judge, is that fifteen years, ten plus five, is reasonable and fair under all the circumstances and the evidence that the Court heard in this case, and especially under the 3553 factors, Judge, which would indicate that a fifteen-year sentence would be sufficient but not greater than necessary to comport with the various sentencing goals, which the Court is well aware of.

Judge, you -- Mr. Cheronis covered a lot of ground, and I'm just going to briefly cover some of the same guideposts along the way.  I do wonder where Vernon Williams would have been if ATF didn't manufacture these crimes.  Perhaps he would have found himself in some other type of crime.  But the bottom line here is ATF manufactured these crimes.  ATF created these crimes and they lured Vernon Williams into committing them.

03:28:20  1        The Court commented and we put it in our sentencing

03:28:22  2   memorandum, Judge, the Seventh Circuit commented on these ATF

03:28:26  3   fictitious stash house robbery plots.  And I consider it quite

03:28:30  4   a condemnation for the Seventh Circuit to begin its opinion in

03:28:34  5   the Corson case with this language:  If judges sat in a

03:28:38  6   policymaking role, perhaps we might have reason to wonder

03:28:41  7   whether this scheme was the right use of law enforcement

03:28:44  8   resources.  That's in the Corson case, Judge.  That's the same

03:28:48  9   ATF scenario that's present in this case, and, in fact, it's

03:28:51 10   the same undercover agent, Agent Gomez, who was used in that

03:28:55 11   case as in this case, Judge.

03:28:56 12        I was the trial attorney or one of the trial

03:28:59 13   attorneys in the Corson case before Judge Pallmeyer.  I had

03:29:02 14   the opportunity to cross-examine Agent Gomez before, and I

03:29:05 15   found his testimony to be incredible in that trial, and I

03:29:10 16   found it to be a fiasco in this trial --

03:29:13 17        THE COURT:  But the jury did accept it.  And did they

03:29:17 18   accept it in the other trial as well?

03:29:19 19        MR. LIPUMA:  They did accept it.  Although I think

03:29:22 20   his testimony and the law enforcement operations were a little

03:29:25 21   bit more, in my view respectfully -- and the jury did convict

03:29:29 22   my client -- but they were outrageous, Judge.

03:29:32 23        THE COURT:  In one of the -- I made this point in the

03:29:35 24   previous sentencing, and I think it's an important one, which

03:29:40 25   is that both you and Mr. Cheronis very effectively

| | | |
|---|---|---|
| 03:29:44 | 1 | cross-examined the agent and did highlight those problems with |
| 03:29:48 | 2 | the investigation.  And so the jury essentially had at their |
| 03:29:57 | 3 | review, during their review in that jury room, the |
| 03:30:02 | 4 | cross-examination that highlighted those points, and they came |
| 03:30:05 | 5 | to the conclusion to convict regardless. |
| 03:30:07 | 6 | So they reached a conclusion that was consistent with |
| 03:30:16 | 7 | law enforcement behavior that at least brought a conviction as |
| 03:30:19 | 8 | opposed to one that should have led to an entrapment acquittal |
| 03:30:24 | 9 | or to an insufficiency of evidence acquittal.  So I think we |
| 03:30:28 | 10 | have to respect that, in light of the fact that the Court has |
| 03:30:32 | 11 | commented on it as well as you and others. |
| 03:30:36 | 12 | MR. LIPUMA:  Yes. |
| 03:30:36 | 13 | THE COURT:  All right. |
| 03:30:38 | 14 | MR. LIPUMA:  Yes, Judge.  Certainly, we do respect |
| 03:30:40 | 15 | the jury's verdict.  We do anticipate appealing, and we might |
| 03:30:44 | 16 | not get anywhere with Count 1, but I would suggest on Count 3, |
| 03:30:48 | 17 | the only testimony -- the only evidence was Agent Gomez's. |
| 03:30:51 | 18 | And I personally think that that is grounds for a decent |
| 03:30:56 | 19 | appeal.  I think the evidence was insufficient on Count 3. |
| 03:30:58 | 20 | But regardless, Judge, that's for another day. |
| 03:31:00 | 21 | Mr. Vernon Williams showed up at this purported |
| 03:31:04 | 22 | robbery without a gun, without a weapon.  Aaron Corson was the |
| 03:31:08 | 23 | client who I represented in front of Judge Pallmeyer, also did |
| 03:31:11 | 24 | not have a gun or a weapon. |
| 03:31:12 | 25 | He was at one point considered to be a career |

| | | |
|---|---|---|
| 03:31:14 | 1 | offender. We were able to show the Court that he wasn't. But |
| 03:31:17 | 2 | his range still was up there, 25, 30 years, and that's what |
| 03:31:20 | 3 | the Government was suggesting. And Judge Pallmeyer said, No, |
| 03:31:23 | 4 | she did not sentence him to that. She went down and sentenced |
| 03:31:27 | 5 | Aaron Corson to sixteen years, quite a similar -- almost an |
| 03:31:29 | 6 | exact scenario as this case, Judge, between the two. |
| 03:31:33 | 7 | So I would respectfully suggest that Judge Pallmeyer |
| 03:31:36 | 8 | also, quite like the Seventh Circuit panel that wrote the |
| 03:31:39 | 9 | condemning opinion recently in the Corson case, likewise found |
| 03:31:45 | 10 | some type of problem with this prosecution, particularly, |
| 03:31:54 | 11 | Judge, when it's presented in such a fashion that the ATF is |
| 03:31:55 | 12 | targeting professional crews. |
| 03:31:57 | 13 | Judge, I would submit this is the furthest thing from |
| 03:32:01 | 14 | a professional crew that one would ever find. Mr. Cheronis |
| 03:32:05 | 15 | brought up the Three Stooges and Mr. Kubiatowski took offense |
| 03:32:08 | 16 | to that, but the fact of the matter is it was the CI, Rojo, at |
| 03:32:12 | 17 | the December 15th or 18th meeting who brought up the Three |
| 03:32:16 | 18 | Stooges, because Scott Lewis couldn't come up with a game |
| 03:32:18 | 19 | plan. So they were suggesting game plans to him. And |
| 03:32:21 | 20 | ultimately he said, Oh, we can pretend we're the police. And |
| 03:32:25 | 21 | Rojo said, You got to get your story straight because you |
| 03:32:28 | 22 | don't want to look like the Three Stooges. And that's |
| 03:32:30 | 23 | precisely what this group was. |
| 03:32:32 | 24 | Fifteen years, Judge, is an extremely long period of |
| 03:32:35 | 25 | time, especially in the federal system where you do the bulk |

03:32:37  1    of your time and you get very little credit, especially in a

03:32:40  2    prison where he's going, which will probably be maximum

03:32:46  3    security.

03:32:46  4              What did Vernon Williams do, Judge?  He met on

03:32:50  5    December 18th -- and this is captured on tape -- for a handful

03:32:54  6    of minutes and he uttered a handful of words, basically

03:32:59  7    agreeing to the concept of committing this crime, according to

03:33:03  8    the jury's verdict.

03:33:04  9              He did not ever possess a gun.  And the evidence

03:33:08  10   would suggest, Judge, that he was either unable or unwilling

03:33:12  11   to obtain a gun.  As we know, he has no gun use in his

03:33:16  12   background.  Fifteen years for a few words, Judge, I would

03:33:20  13   submit, is pretty harsh.

03:33:23  14             These are 3553 nature and circumstances of the

03:33:27  15   offense issues, the factors the Court must consider.  And we

03:33:34  16   have to look at what Vernon did.

03:33:38  17             Vernon did not think up this crime, Judge.  ATF did.

03:33:42  18   ATF solicited Vernon Williams.  Apparently Scott Lewis

03:33:43  19   recruited him in, based on the Court's finding, but ATF then

03:33:47  20   gave him the story line and he apparently agreed.

03:33:50  21             As the Court is obviously well aware, there was no

03:33:53  22   cocaine.  There was no robbery.  Of course, Vernon Williams

03:33:58  23   did not have a gun or a weapon of any sort, Judge.  And I

03:34:02  24   already told you, they kept pressing him.  Bring your big

03:34:05  25   artillery, bring your biggest artillery for this.  And, of

| | | |
|---|---|---|
| 03:34:09 | 1 | course, he couldn't get his hands on anything or he didn't |
| 03:34:11 | 2 | want to get his hands on anything, because he showed up with |
| 03:34:14 | 3 | nothing. |
| 03:34:14 | 4 | This professional crew I'm going back to one more |
| 03:34:16 | 5 | time. You may remember the tape. Mr. Cheronis didn't bring |
| 03:34:20 | 6 | this up, but you may remember the tape, Judge, between |
| 03:34:22 | 7 | Christmas and New Year's where Scott Lewis says to Gomez, Can |
| 03:34:26 | 8 | you get a gun? Because I'm having trouble getting a gun. |
| 03:34:30 | 9 | This is hardly the professional crew that ATF supposedly |
| 03:34:33 | 10 | targets and that Gomez supposedly investigates. |
| 03:34:38 | 11 | A problem I had with Gomez, Judge, and there are |
| 03:34:41 | 12 | many, but you remember the December 18th meeting which was |
| 03:34:43 | 13 | videotaped. And he turns around and says, You guys have done |
| 03:34:46 | 14 | this type of thing before? And you can clearly see Vernon |
| 03:34:51 | 15 | Williams' going his head side to side saying, No. And yet he |
| 03:34:55 | 16 | testified that he construed that as, Yes, that that's exactly |
| 03:34:58 | 17 | what he said. |
| 03:34:59 | 18 | I suggest that Gomez did whatever he could to convict |
| 03:35:02 | 19 | these guys, to get these guys prosecuted and said whatever he |
| 03:35:06 | 20 | could to get the jury to convict. |
| 03:35:10 | 21 | I will briefly cover the strangeness of only using |
| 03:35:14 | 22 | one recording device when ATF policy and his prior practice |
| 03:35:18 | 23 | was to use two. The fact that on January 4th the device |
| 03:35:23 | 24 | malfunctioned, the only device malfunctioned, and then later |
| 03:35:26 | 25 | when these guys were thrown into what some people refer as a |

| | |
|---|---|
| 03:35:30 | 1 |
| 03:35:34 | 2 |
| 03:35:38 | 3 |
| 03:35:40 | 4 |
| 03:35:44 | 5 |
| 03:35:46 | 6 |
| 03:35:49 | 7 |
| 03:35:52 | 8 |
| 03:35:55 | 9 |
| 03:35:59 | 10 |
| 03:36:01 | 11 |
| 03:36:05 | 12 |
| 03:36:09 | 13 |
| 03:36:12 | 14 |
| 03:36:13 | 15 |
| 03:36:16 | 16 |
| 03:36:19 | 17 |
| 03:36:23 | 18 |
| 03:36:25 | 19 |
| 03:36:28 | 20 |
| 03:36:30 | 21 |
| 03:36:33 | 22 |
| 03:36:34 | 23 |
| 03:36:37 | 24 |
| 03:36:39 | 25 |

1  paddywagon -- of course, I don't refer to it as a

2  paddywagon -- but that that device that was put in that

3  vehicle also malfunctioned.

4  He also said he didn't learn about the malfunctioning

5  device for weeks, your Honor, and -- which was contrary to his

6  practice.  And then for several weeks after that -- I think it

7  was seven weeks, Judge -- he didn't tell a colleague, not even

8  Agent Wilson, who's in the cubicle next to him who is the

9  co-case agent on the case.  He didn't tell any of his

10  supervisors about this malfunctioning device.

11  And what happens in the interim?  Agent Wilson goes

12  in the grand jury and testifies falsely saying that the

13  recording -- that this was recorded and this is what the

14  recording device shows.

15  So, of course, he didn't do it intentionally.  But if

16  Gomez had been diligent, this agent would have known to

17  testify truthfully rather than falsely, because he was not

18  given adequate information.

19  Gomez said that he submitted this device to a

20  company, however, he could not recall the name of the company.

21  There's no notes of this company.  There's no reports about

22  this at all.

23  And, of course, we had the improper chain of custody

24  as well.  And, Judge, I would suggest that something happened

25  on January 4th, something happened, and I would -- I'm sure

| | | |
|---|---|---|
| 03:36:44 | 1 | the Court -- I can't say speak for the Court. |
| 03:36:47 | 2 | But something happened on January 4th that Agent |
| 03:36:50 | 3 | Gomez did not like, and that was the day when all the agents |
| 03:36:53 | 4 | and SRT agents, everyone's set up to break these guys down and |
| 03:36:57 | 5 | conduct this arrest.  On that day, as the jury clearly found, |
| 03:37:02 | 6 | Vernon Williams was not prepared to commit a crime. |
| 03:37:07 | 7 | They're supposed to go and ambush three violent, |
| 03:37:09 | 8 | armed, Mexican drug cartel members who are guarding, you know, |
| 03:37:14 | 9 | practically street value millions of dollars worth of cocaine, |
| 03:37:17 | 10 | and the only one who has a gun is Billingsley. |
| 03:37:21 | 11 | Vernon has nothing.  He doesn't have a gun.  He has |
| 03:37:24 | 12 | no restraints.  There's no rope.  There's no duct tape. |
| 03:37:27 | 13 | There's no body armor.  There's no protection for him. |
| 03:37:33 | 14 | The nature and circumstance of the offense also |
| 03:37:36 | 15 | shows, Judge, that all we have is the handful of minutes on |
| 03:37:39 | 16 | December 18th where he utters a few words, possibly of |
| 03:37:42 | 17 | agreement, according to the jury's verdict, and the |
| 03:37:45 | 18 | January 4th meeting where they meet for a handful of minutes. |
| 03:37:48 | 19 | There's no telephone calls from the undercover agent |
| 03:37:52 | 20 | to Vernon Williams, nor from Vernon Williams to the undercover |
| 03:37:56 | 21 | agent.  There's no telephone calls from Vernon Williams to the |
| 03:37:59 | 22 | informant or from the informant to Vernon Williams. |
| 03:38:05 | 23 | It's Lavoyce Billingsley's gun.  I know the Court |
| 03:38:08 | 24 | found that, you know, we're all responsible for it and the |
| 03:38:11 | 25 | jury's verdict has to be respected.  Let's look at that gun. |

03:38:15  1  It was not in proper functioning order.  The slide had to be

03:38:19  2  manually manipulated.  That doesn't mean it didn't operate,

03:38:22  3  but it wasn't -- it would malfunction if it wasn't properly

03:38:27  4  used.  And only Lavoyce -- as the prosecutor indicated, only

03:38:31  5  Lavoyce Billingsley knew that.  Vernon Williams didn't know

03:38:33  6  that, Judge.

03:38:34  7          Who is Vernon Williams?  We know the circumstances of

03:38:37  8  his offense.  Now who is he?  He's a person who's doing life

03:38:41  9  on the installment plan.  A little bit here, a few years

03:38:44  10  there, a few years here, he gets out, and he gets brought into

03:38:48  11  this.  That's his history and characteristics.

03:38:50  12          But if we look at his criminal history, Judge, we see

03:38:53  13  that Vernon Williams is not a violent person.  His criminal

03:38:56  14  history does not include violence.  It does not include drug

03:39:00  15  use.  A couple of the burglaries are of stores, Judge, past

03:39:05  16  hours where the alarm goes off and the police find him hiding

03:39:10  17  in the basement.

03:39:11  18          He does have some drug possession arrests, Judge, but

03:39:14  19  he doesn't have any drug dealing convictions or arrests.  He

03:39:18  20  has no robberies in his background, exactly contrary to what

03:39:23  21  the object of this purported conspiracy was, a violent

03:39:27  22  overtake of violent and armed cartel members.  They don't

03:39:32  23  have -- he doesn't have that in his background, your Honor.

03:39:35  24          What he has in his background is a mess of a life

03:39:40  25  that's been poisoned by drug use and alcohol abuse.  And that

03:39:48   1    stems from, as the PSR reflects and as our sentencing

03:39:53   2    memorandum discusses, Judge, a pretty terrible upbringing any

03:39:58   3    way you look at it.

03:39:58   4          He did not know his natural father.  He was

03:40:02   5    physically and mentally abused by his stepfather for about

03:40:06   6    five years, where he was beaten repeatedly with many types of

03:40:10   7    objects, where he was locked in a closet regularly for hours

03:40:14   8    into days, and where he was deprived of food and a toilet.

03:40:19   9    And the probation officer was too professional to put it in

03:40:24   10    her report, but basically he had to go in a can when he was

03:40:31   11    locked in the closet for days.

03:40:34   12          He ultimately was placed in foster care, and then was

03:40:37   13    placed with other family members.  But while he was in foster

03:40:40   14    care at the age of nine, he was given the opportunity to smoke

03:40:44   15    marijuana, and he started using marijuana regularly.  He had

03:40:48   16    daily drug and alcohol use by the age of thirteen.  At

03:40:52   17    fourteen to sixteen he had regular use of cocaine, which led

03:40:55   18    to a crack cocaine addiction.

03:41:00   19          He has to be held responsible for these crimes.  We

03:41:04   20    recognize that.  But the Court may consider this upbringing

03:41:08   21    and his drug use.  And when he was arrested in this case,

03:41:12   22    Judge, he tested positive for drugs.  He used it on a daily

03:41:16   23    basis.  Does that excuse his actions?  Of course, it doesn't.

03:41:20   24          I'd ask the Court to also consider his physical

03:41:23   25    condition.  The BOP has classified him as disabled.  He

| | |
|---|---|
| 03:41:29 | 1 |
| 03:41:34 | 2 |
| 03:41:37 | 3 |
| 03:41:40 | 4 |
| 03:41:42 | 5 |
| 03:41:43 | 6 |
| 03:41:44 | 7 |
| 03:41:47 | 8 |
| 03:41:51 | 9 |
| 03:41:54 | 10 |
| 03:41:57 | 11 |
| 03:42:02 | 12 |
| 03:42:05 | 13 |
| 03:42:08 | 14 |
| 03:42:11 | 15 |
| 03:42:16 | 16 |
| 03:42:21 | 17 |
| 03:42:25 | 18 |
| 03:42:28 | 19 |
| 03:42:31 | 20 |
| 03:42:35 | 21 |
| 03:42:39 | 22 |
| 03:42:43 | 23 |
| 03:42:45 | 24 |
| 03:42:48 | 25 |

1 certainly isn't likely to engage in any robberies of

2 fictitious or real stash houses upon his release from prison.

3     THE COURT:  As totally disabled, is what --

4     MR. LIPUMA:  Yes, your Honor.

5     THE COURT:  -- is what the classification is.

6     MR. LIPUMA:  Yes, that's true.

7     And I would also point out, Judge, that while he's at

8 the MCC, he has been productive and he has been positive.  We

9 tendered to the Court some 26 certificates of either

10 achievement or participation or completion.  Seven from the

11 MCC dealing with continuing education classes and victim

12 impact seminars, and nineteen others where he has been active

13 in studying religion and scripture.

14     His goal, as I can tell -- as far as I can tell,

15 Judge, is one of sobriety and changing his lifestyle.  I look

16 around this courtroom and I see nobody for Vernon Williams.

17     I know he has, I guess, what would be described as a

18 common law wife, who I've talked to many times, and I know

19 they have two daughters together.  And I know he loves his

20 daughters very much.  He's showed me pictures of them.  He

21 stays in contact with them.  However, the mother has gone on

22 with another man, either they've been married or they're

23 together now, so obviously there's some problems there.  But

24 he does love his children and he was good to his children.

25 And I can't turn to anybody in the courtroom, like I usually

1  do, and say, Look at all the support he has, nor can I go to

2  the Court and say, Look at all the letters in support you have

3  from his friends.

4  But does that mean he's not a human being?  Does that

5  mean he's a piece of garbage that we just throw in prison with

6  the other animals and let him sort it out himself?  I would

7  respectfully suggest no, Judge.  I respectfully suggest that

8  fifteen years is a lot of time in this case, and he should get

9  treatment in Bureau of Prisons.  He should be part of the

10  residential drug abuse program, but he won't even get the

11  benefit of the one-year reduction because he's got the 924(c),

12  the firearm charge.  But he still wants to go through that

13  program, regardless of the fact that he's not going to be

14  rewarded for it in terms of a year off his sentence.  He knows

15  he's still going to be rewarded for it, because he's going to

16  have to come back out into society and he's going to have to

17  get his act together.  Otherwise the installment -- doing life

18  on the installment plan will continue.

19  And from what I've known of him, the times I've spent

20  with him, he's never had a harsh word for anybody.  He's never

21  raised his voice.  I don't -- I probably have used a few cuss

22  words in his presence.  I don't remember him using any cuss

23  words.  And he's -- what he's done in this predicament is stay

24  active in the MCC.  What he's done is read and be involved in

25  the program, the limited programs that are offered.

| | |
|---|---|
| 03:44:15 | 1 |
| 03:44:17 | 2 |
| 03:44:20 | 3 |
| 03:44:22 | 4 |
| 03:44:25 | 5 |

        And I'll tell you, this is one of those guys who
studies the law and calls me, Have you ever read this case?
Have you read this case?  Yes, I've read that case, Vernon.  I
know what you're talking about.  He's active.  He's got a
mind.

        I think he has potential to get out, Judge, and get a
labor man's job, do something hard, hard physical labor, if he
can considering his leg situation.

        You indicate --

        THE COURT:  Was there gang involvement?

        MR. LIPUMA:  Oh, no, Judge.  No -- here, I'll take
that back.

        No, Judge, in his life he's never -- he was born in a
neighborhood where there were gangs, and I think, as he
explained to the probation officer, he was born in the
neighborhood that on one street had one gang, on the next
street had another gang, so he was part of that gang.  But
certainly no gang activity as we've seen in this building.

        THE COURT:  Now, it says on line 308 that he was a
member of the Gangster Disciples street gang between 1986 and
1992, and that he did so simply because that was the group in
the neighborhood.

        MR. LIPUMA:  Judge, he did say that.  I was there.
Ms. Groth -- Vernon volunteered that.  It wasn't like the
probation officer had to investigate that.  He volunteered

03:45:30    1    that.  But he also indicated it was a matter of being in that

03:45:33    2    neighborhood, that was the reason why -- you were either in

03:45:37    3    that neighborhood and a member of the gang -- I mean, we've

03:45:40    4    heard that so many times.  But he certainly doesn't have any

03:45:45    5    gang activity in at least the last seventeen years or more.

03:45:50    6         Judge, for all these reasons, you indicated this was

03:45:55    7    a unique trial.  I think Mr. Kubiatowski might agree with

03:45:59    8    that.  I certainly agree with that.

03:46:02    9         We think fifteen years, Judge, is more than

03:46:05    10    sufficient, and that's what we would respectfully ask the

03:46:08    11    Court to impose.

03:46:09    12         THE COURT:  Okay.  Anything else, Mr. Kubiatowski,

03:46:12    13    that you want to verify or reply to?

03:46:15    14         MR. KUBIATOWSKI:  Just for the record, your Honor, I

03:46:18    15    understand that the fact -- or concerning the nature of the

03:46:20    16    circumstances of the offense is broad.  But I don't believe it

03:46:22    17    includes defense counsel's reassessment of the credibility of

03:46:28    18    certain law enforcement testimony, or how the evidence was

03:46:32    19    presented or the value attached to that evidence.

03:46:37    20         That was the province of the jury, and I don't

03:46:41    21    believe that is part of the Court's consideration.  I could be

03:46:46    22    wrong.  I haven't seen that kind of reassessment argued during

03:46:49    23    the course of a sentencing for -- I don't believe it qualifies

03:46:52    24    as the nature and circumstances of the offense.

03:46:54    25         THE COURT:  I think that's -- well, that is why I

| | | |
|---|---|---|
| 03:46:57 | 1 | precisely said that the jury did find, after effective |
| 03:47:03 | 2 | cross-examination, that the agent's statement was credible |
| 03:47:06 | 3 | enough to convict.  So they had, if we would say, the bumps |
| 03:47:10 | 4 | and bruises of the investigation, whether that was negligence |
| 03:47:14 | 5 | or not an effective way of going about maintaining the |
| 03:47:18 | 6 | documents, they had that at their disposal and they reached |
| 03:47:22 | 7 | that.  So I'm not taking that into account as a nature and |
| 03:47:27 | 8 | circumstance of the offense.  The broader picture as to what |
| 03:47:30 | 9 | the offense involved being a sting operation, I think, is a |
| 03:47:34 | 10 | relevant factor when we look at it in light of Mr. Williams' |
| 03:47:40 | 11 | criminal history. |
| 03:47:41 | 12 |           MR. KUBIATOWSKI:  Which I understand, your Honor. |
| 03:47:43 | 13 |           THE COURT:  Okay. |
| 03:47:43 | 14 |           MR. KUBIATOWSKI:  That was my only point of |
| 03:47:44 | 15 | clarification. |
| 03:47:45 | 16 |           THE COURT:  Okay.  All right.  Anything from you, |
| 03:47:47 | 17 | Mr. Lipuma -- |
| 03:47:47 | 18 |           MR. LIPUMA:  No, your Honor. |
| 03:47:48 | 19 |           THE COURT:  -- before I ask Mr. Williams to speak? |
| 03:47:50 | 20 |           Sir, do you have anything you want to say to the |
| 03:47:52 | 21 | Court before I testify -- excuse me -- before I sentence you? |
| 03:47:57 | 22 | And if you could just move over to the microphone, I'd |
| 03:47:59 | 23 | appreciate it. |
| 03:47:59 | 24 |                       - - - |
| 03:48:02 | 25 |                   ALLOCUTION |

03:48:02  1     THE DEFENDANT:  Your Honor, I just want to say, you

03:48:04  2  know, I'm sorry for all this having happened.  You know,

03:48:07  3  that's basically is -- because I don't know where my mind was

03:48:10  4  at the time.  And I'm just sorry for everything.

03:48:13  5     THE COURT:  Okay.  Thank you, sir.

03:48:13  6                        - - -

03:48:17  7                     SENTENCING

03:48:17  8     THE COURT:  All right.  We start out with a

03:48:23  9  235-to-293 guideline range, plus a 60-month mandatory sentence

03:48:30 10  for the gun conviction.  And when we look at the 3553 factors,

03:48:36 11  then I need to take into account the nature and circumstances

03:48:39 12  of the offense and the history and characteristics of the

03:48:42 13  defendant.

03:48:43 14     Similarly to the previous sentencing of your

03:48:47 15  codefendant, I find it troubling that the criminal history

03:48:56 16  that you have does not comport with the level of the crime

03:49:01 17  that was created for you to participate in.

03:49:04 18     And I specifically refer to your criminal history

03:49:08 19  involving the burglary conviction, which was in 1997, which

03:49:20 20  showed that you entered a discount supply store and were found

03:49:24 21  hiding in the basement with money taken from the cash

03:49:29 22  register; a forgery conviction involving a $387 check from a

03:49:34 23  stolen purse; and another burglary conviction involving the

03:49:43 24  store located in Maywood where the front door glass was kicked

03:49:47 25  in and you fled on foot.

03:49:51 1   Those are the convictions which led you to be here as

03:49:55 2   a criminal history category V, and because you were on parole

03:50:01 3   for that last conviction, it shows, as Mr. Kubiatowski says,

03:50:06 4   someone who has not learned to rehabilitate.

03:50:09 5   But those are inconsistent with someone who would

03:50:14 6   participate in a 15-to-20-kilo strong-arm robbery where people

03:50:20 7   were discussed to be tied up, and that kind of drugs -- that

03:50:28 8   kind and level of drugs were to be taken.

03:50:30 9   There's no drug dealing in the background that I can

03:50:32 10  see in your criminal history.  That's inconsistent -- you have

03:50:38 11  possession of drugs from when you were in your early twenties,

03:50:42 12  all of which were dismissed in the state court.  So it's

03:50:45 13  difficult for me to understand what occurred there, but none

03:50:50 14  of the possession of controlled substances charges that you

03:50:55 15  were charged with when you were 23 and 24 years old sufficed

03:51:00 16  to bring you to a conviction on those.

03:51:03 17  And so the nature and circumstances of the offense,

03:51:06 18  again, are that there's no cocaine, no robbery but for the

03:51:11 19  fact that it was one that the Government created for you to

03:51:16 20  participate in.

03:51:17 21  Now, you participated in it knowing that you hadn't

03:51:20 22  had that criminal history.  You did state on the tape that you

03:51:25 23  were willing to do so.  I do find it to be an interesting

03:51:28 24  anomaly that during the conversations you were permitted to

03:51:33 25  bring a gun and encouraged to bring a gun, and you didn't

| | | |
|---|---|---|
| 03:51:37 | 1 | bring a gun and you're being held responsible, of course, |
| 03:51:40 | 2 | under the law for the gun that your codefendant brought.  But |
| 03:51:43 | 3 | there's no criminal history here that shows that you ever |
| 03:51:48 | 4 | brought a gun to any of those robberies that I just set forth. |
| 03:51:52 | 5 | So I don't find that you would recidivate and commit |
| 03:51:57 | 6 | another crime to the level of the one that the ATF had |
| 03:52:01 | 7 | created.  I don't see that you're going to be dealing in |
| 03:52:03 | 8 | massive quantities of cocaine, that you're going to be |
| 03:52:06 | 9 | burglarizing with a weapon, when you never had done so in the |
| 03:52:10 | 10 | past, and that you didn't bring a weapon with you on this |
| 03:52:14 | 11 | occasion. |
| 03:52:14 | 12 | So as far as the circumstances of the offense are |
| 03:52:16 | 13 | concerned, they are to a degree of criminality that you hadn't |
| 03:52:24 | 14 | participated in in the past.  And when I look at your criminal |
| 03:52:29 | 15 | history, I am satisfied that I would not need to deter you |
| 03:52:33 | 16 | from committing that type of crime in the future. |
| 03:52:38 | 17 | On the other hand, I do see that you cannot stay |
| 03:52:42 | 18 | clear of the law.  The fact that you were still on parole for |
| 03:52:45 | 19 | this offense and willingly entered into this agreement, and |
| 03:52:53 | 20 | even if it was last minute and even if it was organized by |
| 03:52:56 | 21 | others. |
| 03:52:57 | 22 | So the Court has to take into account that I need to |
| 03:53:00 | 23 | protect the public from further crimes by you.  I don't think |
| 03:53:04 | 24 | those crimes would be cocaine stash house robberies, but I |
| 03:53:08 | 25 | think that your attorney has adequately described you, that |

03:53:12 1 you are living life on an installment plan, where you

03:53:15 2 continually go back into prison based upon these other crimes.

03:53:19 3 So when I balance the nature and circumstances of the

03:53:22 4 offense with the seriousness of the -- or the history and

03:53:25 5 characteristics of you, I find that a sufficient sentence for

03:53:31 6 you is the fifteen years on the drugs, with the five years for

03:53:35 7 the gun, which is -- excuse me -- the fifteen-year total, the

03:53:41 8 ten years for the drugs and five years for the gun, so that

03:53:44 9 you have a total sentence of fifteen years.

03:53:46 10 And I think that that is a sufficient sentence also

03:53:50 11 based upon the fact that you're 41 years old and you're

03:53:53 12 disabled. And I can't believe that at the age of 57 or 58,

03:53:56 13 when you get out, that you'll have the ability to go hiding in

03:53:59 14 basements or breaking in through -- kicking in glass doors any

03:54:05 15 longer, when you're standing before me with your cane not even

03:54:08 16 able to walk.

03:54:09 17 So that's a long significant sentence for a very bad

03:54:13 18 decision made on the day to participate in this robbery. But

03:54:18 19 the sentence is designed to send the message to others not to

03:54:23 20 participate in such a robbery in the future, and I think that

03:54:27 21 fifteen years is sufficient to give you the deterrent effect

03:54:31 22 that you personally need as well as balancing the need for the

03:54:37 23 public to know that this is a serious crime and that you

03:54:39 24 should be deterred from committing any other types of crime.

03:54:42 25 So with that, my sentence will be ten years on the

| | | |
|---|---|---|
| 03:54:48 | 1 | drug count, which is -- or the robbery count, which is |
| 03:54:52 | 2 | Count 1, the 60-month sentence, on Count 2, and then a |
| 03:55:00 | 3 | supervised period of release of five years. |
| 03:55:03 | 4 | You will have a $200 special assessment. |
| 03:55:07 | 5 | No fine or restitution. |
| 03:55:09 | 6 | You're going to participate in the DNA collection |
| 03:55:14 | 7 | that's required. |
| 03:55:15 | 8 | And I am going to order both a mental health |
| 03:55:19 | 9 | treatment program as well as a drug treatment program, because |
| 03:55:24 | 10 | based upon what is set forth in the probation officer's |
| 03:55:27 | 11 | report, I do think that the mental health treatment might be |
| 03:55:34 | 12 | beneficial to you, based upon your history as a child, that in |
| 03:55:40 | 13 | prison you can hopefully reach a healthier resolution of that. |
| 03:55:44 | 14 | I'm going to also require that you not possess a |
| 03:55:47 | 15 | firearm or destructive device or commit any other federal, |
| 03:55:52 | 16 | state, or local crime while you're on your supervised release. |
| 03:55:55 | 17 | During the drug aftercare treatment program, you may |
| 03:55:58 | 18 | be required to give a urine test of up to 104 per year, |
| 03:56:03 | 19 | depending on what the probation officer said. |
| 03:56:04 | 20 | You'll need to report to the Probation Office within |
| 03:56:10 | 21 | 72 hours of your release from prison. |
| 03:56:13 | 22 | And that brings me to your right to appeal.  You have |
| 03:56:17 | 23 | a right to appeal this sentence.  You can do so within ten -- |
| 03:56:23 | 24 | you must do so within ten days of the entry of the judgment |
| 03:56:26 | 25 | and commitment order in the case, and Mr. Lipuma can advise |

| | | |
|---|---|---|
| 03:56:30 | 1 | you about your appellate rights. |
| 03:56:32 | 2 | Is there anything else I need to address? |
| 03:56:35 | 3 | MR. KUBIATOWSKI:  Not from the Government, your |
| 03:56:35 | 4 | Honor. |
| 03:56:36 | 5 | THE COURT:  Okay. |
| 03:56:36 | 6 | MR. LIPUMA:  Judge, if I may ask the Court, if the |
| 03:56:38 | 7 | Court would recommend a designation to a facility as close to |
| 03:56:41 | 8 | Chicago as possible. |
| 03:56:42 | 9 | THE COURT:  Well, I can do that, but as you know with |
| 03:56:45 | 10 | his criminal history, I don't know what that becomes. |
| 03:56:47 | 11 | MR. LIPUMA:  Okay. |
| 03:56:48 | 12 | THE COURT:  I would be happy to do that.  It's going |
| 03:56:52 | 13 | to -- the Bureau of Prisons figures that out as far as which |
| 03:56:54 | 14 | one is available, and we'll see what they do. |
| 03:56:57 | 15 | MR. LIPUMA:  Thank you, Judge. |
| 03:56:57 | 16 | THE COURT:  Okay.  Anything else? |
| 03:56:58 | 17 | MR. KUBIATOWSKI:  Thank you, your Honor. |
| 03:56:58 | 18 | THE COURT:  All right.  Thank you. |
| 03:57:05 | 19 | MR. LIPUMA:  Thank you, your Honor. |
| 03:57:06 | 20 | THE DEFENDANT:  Thank you, your Honor. |
| 03:57:07 | 21 | THE COURT:  Good luck to you, sir. |
| | 22 | (Concluded at 3:57 p.m.) |
| | 23 | - - - |
| | 24 | |
| | 25 | |

1

2

3

4                     C E R T I F I C A T E

5

6      I certify that the foregoing is a correct transcript from

7    the record of proceedings in the above-entitled matter.

8

9    /s/April M. Metzler, RPR, CRR, FCRR   November 16, 2009

10   April M. Metzler, RPR, CRR, FCRR       Date

11   Official Federal Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25